BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

ROBERT O. LINDEFJELD
Assistant Director (DC Bar No. 44423)
United States Department of Justice
Enforcement and Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE UNITED STATES OF AMERICA. <br><br> Plaintiff, <br><br>    v. <br><br> THE STATE OF NEW JERSEY; MIKIE SHERRILL, Governor of New Jersey, in her official capacity; JENNIFER DAVENPORT, Attorney General of New Jersey, in her official capacity. <br><br> Defendants. | Civil Case No. 3:26-cv-4755 <br><br><br> **COMPLAINT** |

Plaintiff, the United States of America, by and through its undersigned counsel, brings this civil action for declaratory and injunctive relief, and alleges as follows:

## PRELIMINARY STATEMENT

1.      When President Trump took office, "[o]ur southern border [was] overrun by cartels, criminal gangs, known terrorists, human traffickers, smugglers, unvetted military-age males from foreign adversaries, and illicit narcotics that harm Americans." Proclamation 10,866, Declaring a National Emergency at the Southern Border of the United States, 90 Fed. Reg. 8327 (Jan. 20, 2025).

2.      Under his leadership—and in response to the electoral mandate—the Federal Government is employing its available legal measures to end that crisis in accordance with its well-established, preeminent, and preemptive authority to regulate immigration matters. This authority derives from the United States Constitution, numerous acts of Congress, and binding United States Supreme Court precedent. *See, e.g., Arizona v. United States*, 567 U.S. 387, 394–95 (2012).

3.      Despite the ongoing threat to American lives and communities, the State of New Jersey insists on harboring criminal offenders from federal law enforcement. The State of New Jersey, Governor Mikie Sherrill, and Attorney General Jennifer Davenport (collectively "Defendants") aim to intentionally obstruct federal immigration enforcement and even prosecute federal officers for performing their duties.  In addition to the plethora of dangerous sanctuary laws and policies Defendants already have on the books to obstruct federal law enforcement, Governor Sherrill recently signed three additional laws to obstruct federal law on March 25, 2026.[1]

---

[1] State of New Jersey Press Release, Governor Sherrill Signs Legislation to Protect Constitutional Rights, Keep New Jerseyans Safe (March 25, 2026), https://perma.cc/AHM7-NEFC.

4.     Most dangerous of all, Governor Sherrill signed Senate Bills S3114 and 3216/A1743, with the Orwellian title of the "Law Enforcement Officer Protection Act" ("S3114"). This blatantly unconstitutional ban prohibits "law enforcement officer[s]", including "federal" officers, from wearing a mask "while in the performance of the officer's official duties."  S3114 §§ 2-3. Further, the act requires "[e]very law enforcement officer" to "provide sufficient identification prior to detaining or arresting an individual." *Id.* § 4.  The law provides limited vague exceptions with no guidance on who determines whether they are satisfied. *Id.* §§ 3.b, 4.b. The law took immediate effect and directed the New Jersey Attorney General to "issue guidelines or a directive necessary to effectuate the provisions of this act." *Id.* §§ 5-6.

5.     In signing this law, Governor Sherrill made its unconstitutional nature apparent, declaring that "we're not going to tolerate masked, roving militias pretending to be well-trained law enforcement agents" when referring to federal officers.[2] A press release then reinforced that the Governor is targeting federal officers she believes are "untrained, unaccountable" and thus is "banning ICE agents from wearing masks, and protecting residents' privacy from federal overreach[.]"[3]  The release also made apparent the law was intended to help illegal immigrants evade federal law enforcement and directed the public to a portal to document interactions with "ICE in New Jersey" to "help the state hold ICE accountable for their actions, including potential violations of the law."[4] That portal, operated by Attorney General Davenport, allows the public to "report incidents involving harmful conduct by, or negative interactions with, federal personnel conducting immigration enforcement in New Jersey" so the Attorney General can consider

---

[2] Anthony Johnson, *NJ Gov. Mikie Sherrill signs law banning ICE agents, police from wearing masks,* ABC7 NY (March 25, 2026), https://perma.cc/Q3TH-XEQE.
[3] State of New Jersey Press Release, Governor Sherrill Signs Legislation to Protect Constitutional Rights, Keep New Jerseyans Safe (March 25, 2026), https://perma.cc/AHM7-NEFC.
[4] State of New Jersey Press Release, Governor Sherrill Signs Legislation to Protect Constitutional Rights, Keep New Jerseyans Safe (March 25, 2026), https://perma.cc/AHM7-NEFC.

bringing cases against federal law enforcement.[5] In her confirmation hearing, Attorney General Davenport, under oath, affirmed she would prosecute federal officers for violating state law.[6]

6.      After the law was passed, on April 9, ICE officers arrested several individuals in New Jersey while wearing masks. In response, Governor Sherrill's Office stated that she "is prepared to take any necessary measures if ICE continues to violate the law … [i]ncluding taking the Trump Administration back to court."[7] Disturbed by the Governor's threats, the Department of Justice's Civil Division sent a formal letter on April 9, 2026 to Attorney General Davenport seeking assurances that the law was not enforceable against federal officers and no officials would attempt to enforce it. Attorney General Davenport responded with a letter on April 17, 2026 via email declaring that the law was constitutional and that federal officers were obligated to comply but refusing to opine on any enforcement actions. Unsatisfied with the lack of a concrete answer, the Department of Justice immediately sought clarity on whether New Jersey would enforce the law given the recent alleged violation. The Department of Justice also sent the Ninth Circuit Court of Appeals' decision enjoining a materially identical California law and asked for a response by April 24, 2026. At the time of this complaint, Attorney General Davenport has refused to provide assurances that the State of New Jersey will not enforce the law against federal officers.

7.      Despite the intentional targeting of federal immigration officers in particular, the law applies to all federal law enforcement agencies, including the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA).

---

[5] New Jersey Office of the Attorney General, https://perma.cc/VZT3-9U7G.
[6] Senate Judiciary Monday, February 02, 2026, at 58:20-1:03:30, https://www.njleg.state.nj.us/archived-media/2026/SJU-meeting-list/media-player?committee=SJU&agendaDate=2026-02-02-10:30:00&agendaType=M&av=A.
[7] Joe Strupp, *Masked ICE agents defy Gov. Sherrill ban during arrest in Jackson*, Asbury Park Press (Apr. 9, 2026), https://perma.cc/47NJ-58QK.

8.      In doing so, the law creates a Hobson's Choice for all federal officers: either put themselves at risk by unmasking and providing individual identification, at the cost of officer safety, the safety of their families, and operational effectiveness or face legal consequences by Defendants.  Federal law enforcement officers have faced a significant increase in doxxing, harassment, and assaults, with antagonists and criminals filming and tracking officers using individual identifiers such as their faces and badges. This conduct has led to violence and undermined law enforcement operations.

9.      To be clear, the Federal Government will not comply with this blatantly unconstitutional law. But the threat of enforcement by Defendants chills individual officers from protecting themselves and performing their duties.  The consequences for public safety are severe.

10.      Fortunately, the United States Constitution does not allow Defendants to place federal law enforcement in this untenable bind. S3114 clearly violates long-settled principles of the Supremacy Clause, under which States have no power to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819); *see also Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state.").  The intergovernmental immunity doctrine is an outgrowth of this principle. A state law violates intergovernmental immunity if it "regulates the United States directly or discriminates against the Federal Government or those with whom it deals." *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion).

11.      New Jersey's new law, S3114, directly regulates the Federal Government by dictating permissible uniforms for federal agents under the specter of legal enforcement. But the Federal Government, not New Jersey, has authority to control its own agents and activities. New Jersey lacks the legal authority to regulate the Federal Government at all, much less through a law

targeted at core governmental functions such as law enforcement. Yet that is precisely what S3114 does, by telling federal officers in the performance of their duties what masks they can wear, when they can wear them, and how and when to identify themselves. Applying this doctrine to a materially identical law in California, the Ninth Circuit Court of Appeals issued an injunction pending appeal because the law "attempts to directly regulate the United States in its performance of governmental functions. The Supremacy Clause forbids the State from enforcing such legislation." *United States v. California*, No. 26-926, 2026 WL 1088674 (9th Cir. Apr. 22, 2026).

12.    Employing the same principles, the Third Circuit just recently affirmed an injunction against a separate New Jersey law attempting to indirectly regulate the Federal Government's immigration enforcement, holding that "the very essence of supremacy empowers the federal government to remove all obstacles to its action within its own sphere . . . [and] exempt its own operations from [state] influence." *CoreCivic, Inc. v. Governor of NJ*, 145 F.4th 315, 321 (3d Cir. 2025) (internal quotations and citations omitted). New Jersey has steadfastly refused to learn this lesson. S3114 is even more obviously unconstitutional, as it directly, purposefully, and dangerously regulates all federal law enforcement officers in the performance of their official federal duties. Such blatant disregard for the Constitution is not merely a political statement, but is instead deliberate action that jeopardizes the public safety of all Americans.

13.    New Jersey's S3114 is unconstitutional as to the Federal Government, and the United States therefore brings this action to declare unconstitutional and enjoin the State of New Jersey, Governor Sherrill, and Attorney General Davenport and their officers, agents, servants, employees, and attorneys, and those in active concert with them, from enforcing S3114 against the Federal Government.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345.

15.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b) because Defendants State of New Jersey, its Governor, and its Attorney General reside within the District of New Jersey and acts or omissions giving rise to this Complaint arose from events occurring within this judicial district.

16.      The Court has the authority to provide the relief requested under 28 U.S.C. §§ 1651, 2201, and 2202, and its inherent equitable powers.

## PARTIES

17.     Plaintiff, the United States of America, enforces federal laws through its Executive agencies. Those agencies include but are not limited to the Department of Justice and its component law enforcement agencies—the FBI and the DEA; and the Department of Homeland Security (DHS) and several of its component law enforcement agencies—U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and the Federal Protective Service (FPS).

18.     Defendant State of New Jersey is a State of the United States of America.

19.     Defendant Mikie Sherrill is the Governor of New Jersey and is being sued in her official capacity.

20.     Defendant Jennifer Davenport is the Attorney General of New Jersey and is being sued in her official capacity.

## THE SUPREMACY CLAUSE AND FEDERAL LAW ENFORCEMENT

21.     The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.   The Supremacy Clause incorporates principles of Intergovernmental Immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted).

22.     The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3.

23.     Subordinate officers in various federal agencies assist the President in discharging that duty. *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020); *see also Tennessee v. Davis*, 100 U.S. 257, 263 (1879) (stating that the Federal Government "can act only through its officers and agents").

24.     Federal law empowers the President and various cabinet members with the authority to provide for and dictate the uniforms and conduct of federal law enforcement officers. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the Department of Justice in the Attorney General); 8 U.S.C. § 1103(a)(2) (giving the Secretary of Homeland Security the power to "control, direct[], and supervis[e]" all DHS employees); 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health

programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees).

25.     Because the authority to execute the laws "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States[,]" federal officers and agents "must act within the States." *Davis*, 100 U.S. at 263.

26.     Accordingly, federal law enforcement activities take place within the several states, including New Jersey.

27.     For example, DHS, through ICE and CBP, is principally responsible for enforcing the nation's immigration laws.

28.     Those laws are primarily contained in the Immigration and Nationality Act (INA), and, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I § 8, cl. 4, make up the framework for the "governance of immigration and alien status," *see Arizona*, 567 U.S. at 395.

29.     The INA confers upon the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225–29a, 1231.

30.     As another example, the FPS enforces federal law in and around federal facilities in order to protect the federal property and persons therein. *See* 40 U.S.C. § 1315.

31.     As another example, the DEA enforces the nation's controlled substances laws. *See generally* The Controlled Substances Act (CSA), codified as amended at 21 U.S.C. §§ 801, *et seq.*

32.     In carrying out that mission, the DEA investigates and aids in the prosecution of major violators of controlled substances laws; seizes and forfeits assets derived from illicit drug

trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100–0.101[8]

33.    As another example, the FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. *See* 28 C.F.R. § 0.85. It carries out this mission through numerous operations throughout the country and in partnership with state and local officials.[9]

34.    These and other federal law enforcement agencies carry out their law enforcement duties throughout the nation, including in New Jersey.

## NEW JERSEY'S LAW

35.    On March 25, 2026, Governor Sherrill signed the so-called "Law Enforcement Officer Protection Act." S3114 § 1. The law took effect immediately. S3114 § 6.

36.    The law applies to "law enforcement officer[s]," which is defined as "a member of *any federal*, State, county, or municipal law enforcement agency, department, or division of those governments who is statutorily empowered to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the laws of this State or of the United States." S3114 § 2 (emphasis added). This means the law applies to every federal law enforcement officer operating in New Jersey, from ICE to the FBI.

37.    This law dictates that any "law enforcement officer shall not wear a mask or disguise when interacting with the public while in the performance of the officer's official duties." S3114 § 3.a. The law then creates narrow exceptions for officers "engaged in an undercover assignment or other tactical operation," "subject of a threat of retaliation," wearing a shield that

---

[8] *See also* DEA Mission Statement, DEA, https://perma.cc/99W4-98GL.
[9] *See also* FBI, About, Mission and Priorities, https://www.fbi.gov/about/mission (last visited Mar. 27, 2026).

does not conceal an officer's face, and medical masks. S3114 § 3.b. Those are the only exceptions. The law does not state who determines whether the exceptions are satisfied. The exceptions show that Defendants recognize there are legitimate reasons to wear masks during the performance of law enforcement duties; Defendants would just draw the policy line differently from the Federal Government.

38.    Further, the law requires "[e]very law enforcement officer [to] provide sufficient identification prior to detaining or arresting an individual." S3114 § 4.a. The law then states when that requirement is satisfied: "the officer is dressed in a department-issued uniform bearing the agency insignia," "the officer demonstrates a department-issued identification card bearing the officer's photograph and identifying information," "the officer demonstrates a badge" or similar insignia "which identifies the officer by number," or "the officer verbally discloses, in a clear and audible manner, the officer's name" and agency. *Id.* The law then provides narrow exceptions: when the information would compromise an investigation, "a supervisor determines stealth is necessary," or "a law enforcement officer reasonably believes the officer's personal safety is at risk." S3114 § 4.b. The law then says it does not prohibit officers in "plain clothes or operating an unmarked vehicle from intervening in *urgent* matters of public safety." S3114 § 4.c (emphasis added). Again, it is unclear who determines whether this requirement or the exceptions are satisfied.

39.    Notably, New Jersey does not have similar restrictions on masking by other types of officials or private individuals.

40.    The law directs the Attorney General to "issue guidelines or a directive necessary to effectuate the provisions of this act." S3114 § 5. The Attorney General of New Jersey is the "chief law enforcement officer" with "broad authority over criminal justice matters," including the

authority to issue guidelines and directives that carry the force of law. *In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6*, 246 N.J. 462, 482-483, 487-89 (2021); *see also* NJ Rev Stat §§ 52:17B-97—110; 52:17B-4(d).

## THE LAW SEVERELY HARMS THE FEDERAL GOVERNMENT AND PUBLIC SAFETY

41.    Federal law enforcement agencies cannot and will not comply with the challenged Act, which is unconstitutional and recklessly disregards officer safety and federal operational needs.

42.    Now is an extraordinarily dangerous time to serve in federal law enforcement. Protecting the personal identities of federal officers and their families is necessary in part due to the increasingly common threats of targeted harassment of, and retaliation against, federal immigration agents for simply doing their jobs. While such threats have always existed, the volatile political environment and technological advancements have increased such threats exponentially, requiring new tactics to mitigate the harms to officer safety and operational effectiveness.

43.    Increasingly, individuals photograph, film, and publish online federal enforcement actions and include the personal identities of federal officers. The photographs and films are posted online for the sole purpose of intimidating and harassing government employees and are directly used by members of local organized crime and transnational criminal organizations in serious and potentially deadly ways.

44.    During enforcement actions, federal officers regularly observe and overhear individuals shouting phrases such as "doxx these people," "find out who they are and where they live," and "we will find out who you are and who your family members are."

- 11 -

45. Doxxing of federal officers has also been encouraged across the web. Some examples of websites perpetrating the doxxing of ICE staff and contractors are ICESpy.org, ICEList.is, and ICEList.info. A recent leak of 4,500 officers was sent to one of these sites, which will publicly post their identities.[10]

46. Indeed, some individuals are taking pictures of officers' faces and running those pictures through facial recognition applications that will search all of social media and these sites. Once a match is made, they will continue to search for family members, including children. They then disseminate this information online, allowing people to track, harass, and obstruct law enforcement. Flyers have also been distributed revealing the identities of officers and their phone numbers.

47. This opens these officers up to harassment, tracking, and assaults in the performance of their duties in the field. If individuals can recognize them, they have additional means to harass and obstruct law enforcement. Agitators routinely use this information to follow officers, block their cars, ram them, alert others to their presence so targets can flee, and assault officers.

48. Threats against officers and agents have increased substantially in number since 2024. ICE officers alone are facing an "8,000% increase in death threats against them and a more than 1,300% increase in assaults against them."[11] Similarly, DHS officers have faced 182 vehicular

---

[10] Joanna Putman, *'ICE List' doxxing site alleges DHS whistleblower leaked identities of 4,500 agents,* Police 1 (Jan. 14, 2026), https://perma.cc/LB7Z-XH3X.
[11] Press Release, DHS, ICE Officers Face an 8,000% Increase in Death Threats Against Them and Their Families (Jan. 26, 2026), https://perma.cc/7KXX-9CSU.

assaults, a massive increase.[12] These threats are coming from rioters, illegal aliens, and "highly sophisticated gangs like Tren de Aragua and MS-13, criminal rings, murderers, and rapists."[13]

49.    The threats to federal officers are serious and potentially deadly. They range from taunting, online doxxing, and stalking, to "vehicles being used as weapons towards" officers[14] and even bounties being "placed on their heads for their murders."[15] Indeed, violent gangs, including from Mexico have placed substantial bounties on the heads of federal officers.[16]

50.    Officers and agents have been followed home from work. At least one officer was followed home by individuals who then assaulted and threatened his family. Other officers have been followed to their hotels while deployed.

51.    In October 2025, an illegal alien was arrested by DHS "after he posted on TikTok in Spanish soliciting the murder of ICE agents."[17]

52.    Even as recently as March of this year, when ICE officers were deployed to airports to assist with security line backlogs, unmasked agents were harassed.[18] Also in March 2026, protestors at "No Kings" rallies across the country called for the death of ICE agents and attacked federal agents.[19]

---

[12] Press Release, DHS, DHS Law Enforcement Experienced More Than 180 Vehicle Attacks Since President Trump Took Office (Feb. 3, 2026), https://perma.cc/589W-UWX3.

[13] Press Release, DHS, 8000% Increase in Death Threats Against DHS, ICE Law Enforcement as They Risk Their Lives to Remove the Worst of the Worst (Oct. 30, 2025), https://perma.cc/VXK9-MSBQ [hereinafter Press Release, 8000% Increase in Death Threats].

[14] See id.

[15] See Press Release, 8000% Increase in Death Threats, supra note 5.

[16] Press Release, DHS, Bounties Originating From Mexico Offered to Shoot ICE and CBP Officers in Chicago (Oct. 14, 2025), https://perma.cc/ZJ7T-BLWN.

[17] See Press Release, 8000% Increase in Death Threats, supra note 5.

[18] Anthony Blair & Alex Oliveira, Unmasked ICE agents hounded after being deployed to airports in attempt to clear TSA crisis, NY Post (March 23, 2026), https://perma.cc/KNG7-LC4K.

[19] Associated Press, Dozens Arrested for Failing to Disperse After 'No Kings' Rally in Los Angeles, U.S. News & World Report (March 29, 2026), https://www.usnews.com/news/us/articles/2026-03-29/dozens-arrested-for-failing-to-disperse-

53.      Some doxxing and harassment incidents have resulted in federal charges. A man was arrested in September for posting an ICE attorney's personal information online and urging others to harass her.[20] And three women were indicted by a federal grand jury that month for livestreaming their pursuit of an ICE agent to his home and then posting his home address on Instagram.[21]

54.      In New Jersey, twins who threatened to shoot ICE Officers "on sight" and hang a DHS official were found with illegal firearms, resulting in arrests and charges.[22]

55.      Federal officials have been arresting and charging these criminals where they can, but it is impossible to charge or even deter them all.[23]

56.      Sadly, the violent rhetoric, doxxing, harassment, and threats have also led to direct violence against federal officers. Shots were fired at CBP agents while conducting immigration enforcement operations in Chicago.[24] And on September 24, 2025, a sniper fired indiscriminately

---

after-no-kings-rally-in-los-angeles; Megan De Mar, *DHS claims Chicago "No Kings" protester threatened ICE agents, wants criminal charges,* CBS News (October 21, 2025), https://perma.cc/XZR3-NFMH.

[20] *See* ICE, California man accused of doxxing ICE employee now in custody (Sep. 26, 2025), https://perma.cc/F9YE-EU73.

[21] Associated Press, *Federal prosecutors charge 3 activists with 'doxing' of ICE agent in Los Angeles*, PBS (Sep. 29, 2025 14:15 ET), https://perma.cc/55RN-PP5H; *see also* Press Release, DHS Condemns Dangerous Doxxing, *supra* note 9.

[22] Press Release, DHS, DHS Arrests New Jersey Twins Who Threatened to Shoot ICE Officers "On Sight" and Hang Assistant Secretary Tricia McLaughlin (Dec. 9, 2025), https://perma.cc/D3GL-SJEY.

[23] Bethany Blankley, *Those doxxing, threatening ICE agents, arrested, indicted,* The Center Square (Oct. 12, 2025), https://perma.cc/HN5T-V9GH. (collecting various arrests and charges).

[24] Homeland Security (@DHSgov), X (Nov. 8, 2025, 14:27 ET), https://perma.cc/J35L-MJE3.

at an ICE facility in Dallas, killing several detainees.[25] Bullet casings found at the scene read: "Anti-ICE."[26] Several other violent ambushes have resulted in charges as well.[27]

57. FPS officers have also been photographed in and had their images used in "Wanted-Domestic Terrorist" posters with the officer's name posted around Eugene, Oregen. In January 26, protestors disrupted a hotel in Portland where they believed ICE Officers were staying, resulting in multiple arrests.

58. Officers are therefore facing an intensely hostile environment that jeopardizes their safety and that of their families. Indeed, there have been multiple instances where ICE officers have been followed, and their families have been contacted and threatened by individuals who uncovered their personal information.[28]

59. While not all of these safety concerns stem from doxxing, the ability of agitators to identify and track agents increases the risks of harassment, obstruction, and violence.

60. And while masking and removing individual identifiers is not a cure all, these tactics can be essential to mitigate these growing risks. Masking can prevent agitators from identifying and tracking officers, especially using facial recognition or other tools. And while officers almost always wear tags identifying them as federal officers, personal identifiers carry similar risks that can allow agitators to identify and harass individual officers. Masking and removing individual identifiers reduce the risk of officers' personal identities being shared

---

[25] *See* Press Release, DHS, DHS Issues Statement on Targeted Attack on Dallas ICE Facility (Sep. 24, 2025), https://perma.cc/WX72-K9RB.
[26] *Id.*
[27] Press Release, ICE, 10 suspects charged in July 4 attack on Texas ICE detention facility (July 8, 2025), https://perma.cc/8Q2E-J626; Press Release, DOJ, Antifa Cell Members Convicted in Prairieland ICE Detention Center Shooting (March 13, 2026), https://perma.cc/4UTG-WYRL (convicting Antifa members of shooting in Prairieland).
[28] *See id.*; *see also* Press Release, DHS, DHS Condemns Dangerous Doxxing and Escalating Threats Against Federal Law Enforcement Officers (Oct. 9, 2025), https://perma.cc/86TM-H9ZE [hereinafter Press Release, DHS Condemns Dangerous Doxxing].

publicly, which helps ensure that officers' privacy and safety, and that of their family members, remains intact. Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal history, gang affiliations, transnational criminal organizations, and known or suspected terrorists.

61.    Masking and a lack of personal identifiers also prevents suspects from identifying officers who may be involved in future enforcement actions. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, masking is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. Where the potential targets of law enforcement operations have access to databases of individual officers' identities, it can undermine undercover operations and plain clothes missions.

62.    This law's requirements would thwart plainclothes surveillance—the whole point of which is not to reveal officers' identities to mitigate the risk of evasion by targets. Furthermore, by banning masks, the law would enable suspects to identify officers who may be involved in future enforcement actions, including undercover operations. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, masking is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent.

63.    Officers also need flexibility to determine when to announce their identities and the agency they work for. Because of the sanctuary policies of states like New Jersey, officers often have to engage in "at-large" arrests in the community of dangerous criminal aliens who have been released by the State, which increases the danger to themselves. During operations, premature announcements can result in targets fleeing or agitators intervening. Forcing officers to clearly

identify themselves in tense situations can escalate situations further and result in harm to the officers, the targets of law enforcement, and the public. Interfering with law enforcement and helping targets evade enforcement can also threaten public safety, especially when the target is a criminal (which is often the case).

64.     When officers are doxxed and followed, federal agencies have to expend significant resources to protect those officers and otherwise mitigate risks to operations. Those resources could otherwise be used to fulfill the agencies' primary missions.

65.     CBP and ICE allow their officers and agents to wear facial coverings and remove individual identifiers in certain situations. Situations where these tactics are deemed necessary vary based on an officer's personal safety, previous doxxing incidents, and the operation. The agencies also allow officers to use discretion to decide when to announce themselves. Federal regulations provide that "an immigration officer who is authorized to execute an arrest" announce themselves and the reason for the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii). That is within the agencies' discretion and cannot be subjected to bright-line rules.

66.     Removing the flexibility to wear facial coverings or remove individual identifiers undermines officer safety and operational effectiveness.

67.     Denying federal agencies and officers that choice would chill federal law enforcement and deter applicants for law enforcement positions.

68.     The FBI and DEA have similar concerns about officer safety and operational effectiveness.

69.     Finally, the threat of state enforcement, whether criminal or civil, for noncompliance will only further exacerbate the chilling effect of these laws. Officers face a choice

- 17 -

of whether to unmask and identify themselves when it may be dangerous to themselves, others, and the operation, or face the threat of enforcement. Either option presents serious risks and harms and purposefully works to chill the enforcement of federal law.

## ENFORCEMENT THREAT

70.     The threat of prosecution is not merely hypothetical. Federal agencies will not comply with these unconstitutional and dangerous laws. As a result, individual officers face the risk of enforcement by Defendants.

71.     New Jersey presumably would not have expressly included federal law enforcement in S3114's definition of law enforcement officer and coverage if the State did not intend to enforce its law.

72.      Indeed, in signing this law, Governor Sherrill declared that "we're not going to tolerate masked, roving militias pretending to be well-trained law enforcement agents."[29] A press release then made clear the Governor is targeting federal officers she believes are "untrained, unaccountable" and thus is "banning ICE agents from wearing masks, and protecting residents' privacy from federal overreach."[30]  The law as written applies to law enforcement, not to citizens, even those impersonating law enforcement. The release also made clear the law was to protect illegal aliens from law federal law enforcement and directing them to a portal to document interactions with "ICE in New Jersey" to "help the state hold ICE accountable for their actions, including potential violations of the law."[31]

---

[29] Anthony Johnson, *NJ Gov. Mikie Sherrill signs law banning ICE agents, police from wearing masks,* ABC7 NY (March 25, 2026), https://perma.cc/Q3TH-XEQE.
[30] Press Release, Governor Sherrill Signs Legislation to Protect Constitutional Rights, Keep New Jerseyans Safe (March 25, 2026), https://perma.cc/AHM7-NEFC.
[31] Press Release, Governor Sherrill Signs Legislation to Protect Constitutional Rights, Keep New Jerseyans Safe (March 25, 2026), https://perma.cc/AHM7-NEFC.

73.     That portal, operated by Attorney General Davenport, allows the public to "report incidents involving harmful conduct by, or negative interactions with, federal personnel conducting immigration enforcement in New Jersey" so the Attorney General can consider bringing cases against federal law enforcement.[32] In her confirmation hearing, Attorney General Davenport, under oath, made clear she would prosecute federal officers for violating state law, whatever that law might be.[33]

74.     Soon after the law was passed, ICE officers arrested several individuals in New Jersey while wearing masks. In response, Governor Sherrill's Office stated that she "is prepared to take any necessary measures if ICE continues to violate the law … [i]ncluding taking the Trump Administration back to court."[34] Disturbed by the Governor's threats, the Department of Justice's Civil Division sent a formal letter on April 9, 2026 to Attorney General Davenport seeking assurances that the law was not enforceable against federal officers and no officials would attempt to enforce it. Attorney General Davenport responded with a letter via email on April 17, 2026 declaring that the law was constitutional and that federal officers were obligated to comply but refusing to opine on any enforcement actions. Unsatisfied with the lack of a concrete answer, the Department of Justice immediately sent an email seeking clarity on whether New Jersey would enforce the law given the recent alleged violation. The Department of Justice also sent the Ninth Circuit Court of Appeals' decision enjoining a materially identical California law and asked for a response by April 24, 2026.

---

[32] New Jersey Office of the Attorney General, https://perma.cc/VZT3-9U7G.
[33] Senate Judiciary Monday, February 02, 2026, at 58:20-1:03:30, https://www.njleg.state.nj.us/archived-media/2026/SJU-meeting-list/media-player?committee=SJU&agendaDate=2026-02-02-10:30:00&agendaType=M&av=A.
[34] Joe Strupp, *Masked ICE agents defy Gov. Sherrill ban during arrest in Jackson*, Asbury Park Press (Apr. 9, 2026), https://perma.cc/47NJ-58QK.

75.     At the time of this complaint, Attorney General Davenport has failed to provide assurance that the State of New Jersey will not enforce the law against federal officers. no response has been provided. Instead, Attorney General Davenport waited until April 24 to demand a more formal letter. This was likely a delay tactic to avoid providing a more meaningful response.

76.     To the contrary, the Defendants have expressed a desire to enforce these laws against federal officers in the performance of their duties.

77.     This law reflects a long and dangerous pattern of Defendants purposefully targeting federal law enforcement. This law was passed with several others targeting federal immigration enforcement. And those laws are emblematic of a long line of similar laws. Indeed, Governor Sherrill issued an executive order demonizing federal immigration enforcement, referring to their work as reflecting "deeply troubling trends in militarized federal civil immigration enforcement in cities and states across the United States." NJ Exec. Order No. 12, § 1(b). This was accompanied by a press release stating "Today, we are making clear that the Trump administration's lawless actions will not go unchecked in New Jersey. Given ICE's willingness to flout the Constitution and violently endanger communities – detaining children, arresting citizens, and even killing several innocent civilians – I will stand up for New Jerseyans['] right to be safe."[35] Along with this EO, the Governor also announced the portal to report actions by federal officers to Attorney General for potential legal actions.[36]

78.     Thus, like many other recent actions by Defendants, S3114 has the purpose and effect of impeding federal law enforcement in New Jersey.

---

[35] State of New Jersey Press Release, Governor Sherrill Takes Action to Protect New Jerseyans' Safety, Defend Constitutional Rights (Feb. 11, 2026), https://perma.cc/6KHV-LMBG.
[36] Id.

79.     The United States is irreparably harmed by laws that violate the Supremacy Clause by regulating the United States, thus impinging on the ability of the United States to carry out its functions through its Executive agencies, particularly in the context of its sovereign functions such as immigration enforcement. The United States is further irreparably harmed absent an injunction because a failure to enjoin this law will encourage other states to enact similar laws.

80.     There is no adequate remedy at law.

81.     The public interest favors maintaining our system of federalism and the Constitutional lines drawn between Federal and State power and enabling the Federal Government to carry out its functions as mandated by the Constitution and Congress.

## CLAIMS FOR RELIEF

### COUNT I
### VIOLATION OF THE SUPREMACY CLAUSE
### (UNLAWFUL REGULATION OF THE FEDERAL GOVERNMENT)

82.     Plaintiff hereby incorporates paragraphs 1 through 80 of the Complaint as if fully stated herein.

83.     New Jersey's enforcement of S3114 against federal law enforcement officers constitutes an unlawful regulation of the Federal Government.

84.     S3114 purports to ban federal agents from wearing masks while performing their duties in New Jersey and subjects those agents to state enforcement for noncompliance.

85.     S3114 also purports to require federal agents to display visible identification while performing their duties in New Jersey or to otherwise announce themselves in specific ways and subjects those agents to state enforcement for noncompliance.

86.     S3114 therefore purports to directly regulate the Federal Government in violation of the intergovernmental immunity doctrine.

- 21 -

87.     Accordingly, S3114 is invalid under the Supremacy Clause and its application to the Federal Government should be enjoined.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests the following relief:

A.     That this Court enter a judgment declaring that S3114 violates the Supremacy Clause and is therefore invalid as to federal agencies and officers;

B.     That this Court enjoin Defendants, as well as their successors, agents, servants, employees and attorneys, and all those working in concert with them, from investigating or enforcing S3114 against federal agencies and officers;

C.     That this Court award the United States its costs and fees in this action; and

D.     That this Court award any other relief it deems just and proper.

DATED: April 29, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

*/s/ Robert O. Lindefjeld*
ROBERT O. LINDEFJELD
Assistant Director (DC Bar No. 44423)
United States Department of Justice,
Enforcement and Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States*

## LOCAL CIVIL RULE 101.1(f) DESIGNATION

The United States designates the United States Attorney's Office to receive notices and papers at the following address: Civil Chief, U.S. Attorney's Office 970 Broad Street, 8th Floor, Newark, NJ 07102.

- 23 -