

*STATE OF NEW JERSEY*

| | | |
|---|---|---|
| **MIKIE SHERRILL**<br>*Governor* | OFFICE OF THE ATTORNEY GENERAL<br>DEPARTMENT OF LAW AND PUBLIC SAFETY<br>OFFICE OF THE SOLICITOR GENERAL | **JENNIFER DAVENPORT**<br>*Attorney General* |
| **DR. DALE G. CALDWELL**<br>*Lt. Governor* | PO BOX 080<br>TRENTON, NJ  08625-0080 | **JEREMY M. FEIGENBAUM**<br>*Solicitor General* |

June 10, 2026

**<u>VIA ECF</u>**

The Honorable Renée Marie Bumb, U.S.D.J.
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

> **Re:    *United States of America v. New Jersey, et al.*, No. 26-cv-04755 (RMB)**

Dear Chief Judge Bumb:

Under Your Honor's individual rules and procedures, Defendants State of New Jersey, Governor Mikie Sherrill, and Attorney General Jennifer Davenport write to request a pre-motion conference before moving to dismiss the complaint, or in the alternative, for summary judgment. If the Court determines that a pre-motion conference is unnecessary and directs the parties to proceed with briefing, the State requests at least two weeks from the date of any such order to file its moving papers.

## I.    Background

The Law Enforcement Officer Protection Act of 2026 reflects a careful compromise. The New Jersey Legislature recognized that masked, anonymized policing harms both law-enforcement officers and the public. Masked, anonymized policing leads to negative encounters between law enforcement and the public, increases the risk of criminal impersonation of law enforcement, and undermines the public's trust in law enforcement. But there are nonetheless times when concealing faces or identities will be appropriate for law enforcement. So the Act adopts a series of safeguards that apply equally to federal, state, county, and local law-enforcement officers and that govern masking and the withholding of identification—but with a series of comprehensive exceptions to cover law-enforcement needs.

The Act has two main requirements. First, the Act provides that an officer "shall not wear a mask or disguise when interacting with the public while in the performance of the officer's official duties." S3114 § 3.a. This requirement, however, is subject to comprehensive exceptions. Officers are exempt when they are "engaged in an undercover assignment or other tactical operation" or when they are "the subject of a threat of retaliation resulting from the performance of the officer's official duties." *Id.* §§ 3.b(1)-(2). They are also exempt when

wearing "a shield that does not conceal the officer's face to protect the officer's face from harm"; "a medical grade mask or N95 respirator designed to prevent the transmission of disease"; "a mask for protection against exposure to smoke during a State of Emergency"; "a mask designed to protect against exposure to cold during a weather emergency"; or "a mask to protect against exposure to biological or chemical agents during an incident where these agents may be present." *Id.* §§ 3.b(3)-(7).

Second, the Act requires officers to "provide sufficient identification prior to detaining or arresting an individual." *Id.* § 4.a. But that modest requirement is satisfied if the officer "is dressed in a department-issued uniform"; "demonstrates a department-issued identification card bearing the officer's photograph and identifying information"; "demonstrates a badge, tag, label, or other department-issued identification which identifies the officer by number"; or "verbally discloses" the officer's name and employing agency. *Id.* §§ 4.a(1)-(4). And the identification requirement does not prohibit "a law enforcement officer in plain clothes or operating an unmarked vehicle from intervening in urgent matters of public safety." *Id.* § 4.c. Nor does it apply when "the release of sufficient identification may compromise the integrity of an authorized investigation"; "a supervisor determines stealth is necessary"; or "a law enforcement officer reasonably believes the officer's personal safety is at risk." *Id.* §§ 4.b(1)-(3).

Two weeks after the State enacted S3114, the Federal Government sent a letter to the Attorney General asking about the Act's future enforcement. Because the letter contained no information concerning whether federal officers will mask or obscure their identities in a manner that would violate the Act, the Attorney General declined to opine on hypothetical violations of the Act or necessarily hypothetical enforcement actions. The Federal Government ultimately filed a one-count pre-enforcement facial challenge, alleging that the Act violates intergovernmental immunity by directly regulating the Federal Government. ECF No. 1.

## II.    Discussion

The State's motion will seek dismissal for lack of Article III standing and for failure to state a claim or, in the alternative, summary judgment.

As to standing, the Federal Government cannot meet its burden to show that it has suffered an injury in fact. In this pre-enforcement context, the Federal Government must show that it "(1) intend[s] to take action that is (2) arguably affected with a constitutional interest but is (3) arguably forbidden by the Law, and (4) the threat of enforcement against them is substantial." *See Nat'l Shooting Sports Found. v. Att'y Gen. N.J.*, 80 F.4th 215, 219 (3d Cir. 2023). The Federal Government has alleged no concrete plans for its agents to wear masks or withhold identification in ways that actually violate the Act. Although the Federal Government alleges its agents will continue to wear masks or withhold identification, it does not allege that they will actually do so in ways that fall outside the Act's comprehensive exceptions.

As to the merits, Plaintiff's claim fails twice over. Initially, Plaintiff cannot prevail on a facial intergovernmental-immunity challenge, given the demanding standard that applies. A



facial challenge requires the challenger to establish "that no set of circumstances exists under which the statute would be valid." *United States v. Cuevas-Almonte*, 156 F.4th 319, 328 (3d Cir. 2025). Because direct-regulation intergovernmental immunity and Supremacy Clause immunity are two sides of the same coin, to prevail on its facial intergovernmental-immunity claim, the Federal Government must show that its officers would get Supremacy Clause immunity in *all* circumstances. *See Johnson v. Maryland*, 254 U.S. 51, 55 (1920). But that is a fact-intensive inquiry. And because the Act imposes only the minimal burden to not wear a mask and to provide identification—subject to various common-sense exceptions—it is difficult to imagine that federal agents would ever get Supremacy Clause immunity, let alone would *always* get immunity. That means this Court must ultimately reject this facial challenge.

The Federal Government's claim also fails on its own terms. The Act does not violate intergovernmental immunity because it does not improperly "lay[] hold of" federal agents "in their specific attempt to obey orders," but merely imposes a "general rule of conduct" that "might affect incidentally the mode of carrying out the employment." *Johnson*, 254 U.S. at 56-57. The effects of the Act are minimal, simply prohibiting any law-enforcement officer from wearing "a mask" when "interacting with the public" or withholding identification "prior to detaining or arresting an individual." S3114 §§ 3.a; 4.a. And the Act includes exceptions to both requirements covering every circumstance in which an officer might actually need a mask or need to forego identification to perform their law-enforcement duties. So it is unsurprising that the Federal Government has identified no instance when masking or withholding identification would be necessary for law enforcement but prohibited by the Act.

If this Court does not dismiss the case, it should grant summary judgment because the Federal Government cannot satisfy the other injunction factors necessary for a permanent injunction. *Winter v. NRDC*, 555 U.S. 7, 32 (2008). Plaintiff suffers no irreparable harm for which there is no adequate remedy at law in the absence of an injunction, largely because it can simply defend against any enforcement proceedings on an as-applied basis. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 201-03 (3d Cir. 2024). And the balance of the equities and public interest also weigh against an injunction, where the Act's common-sense provisions and exceptions protect the public and law enforcement alike.

This Court should allow the State to move to dismiss, or alternatively, for summary judgment. Given the posture here, the State also requests that the Court waive the applicability of Local Rule 56.1, which requires a statement and responsive statement of material facts.

<div style="margin-left: 40%;">

Respectfully submitted,

JENNIFER DAVENPORT
ATTORNEY GENERAL OF NEW JERSEY

By:   */s/ September R. McCarthy*
September R. McCarthy
Deputy Attorney General

</div>

