

**United States Department of Justice**
*Civil Division*
*Enforcement & Affirmative Litigation Branch*
*Post Office Box 386*
*Washington, D.C. 20044-0386*
*Tel: (202) 451-7488*
*Email: robert.o.lindefjeld@usdoj.gov*

June 16, 2026

**VIA ECF**
The Honorable Renée Marie Bumb, Chief U.S.D.J.
United States District Court for the District of New Jersey
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

    Re: *United States of America v. State of New Jersey, et al.*, No. 26-cv-04755-RMB-MJS

Dear Chief Jude Bumb:

    This letter is in response to the letter submitted by New Jersey Attorney General Jennifer Davenport on June 10, 2026 in the above-captioned case. In that letter, General Davenport suggests that summary judgment is an appropriate vehicle for deciding the issues in this case. Plaintiff United States agrees because the issues here are purely legal in nature and there are no genuine disputes of material facts between the parties. Moreover, the issues to be decided in a motion to dismiss (which Plaintiff believes it would win) would be identical. Consequently, to avoid duplicative briefing, Plaintiff proposes that the parties file cross motions for summary judgment.

    In terms of timing, Plaintiff proposes that Defendants file their motion for summary judgment within two (2) weeks from the date of the Court's briefing order. Plaintiff will file its combined motion for summary judgment and opposition to Defendants' motion Three (3) weeks later. Two (2) weeks after that, Defendants should file their reply and Two (2) weeks after that Plaintiff can file a reply brief in support of Plaintiffs' cross motion.

## I.    Background

    On March 25, 2026, Governor Sherrill signed Senate Bills S3114 and 3216/A1743, with the Orwellian title of the "Law Enforcement Officer Protection Act" ("S3114").  This blatantly unconstitutional ban prohibits "law enforcement officer[s]", including "federal" officers, from wearing a mask "while in the performance of the officer's official duties." S3114 §§ 2-3. Further, the act requires "[e]very law enforcement officer" to "provide sufficient identification prior to detaining or arresting an individual."  *Id.* § 4.  The law provides limited vague exceptions with no guidance on who determines whether they are satisfied. *Id.* §§ 3.b, 4.b. The law took immediate effect and directed the New Jersey Attorney General to "issue guidelines or a directive necessary to effectuate the provisions of this act." *Id.* §§ 5-6.

In signing this law, Governor Sherrill made its unconstitutional nature apparent, declaring that "we're not going to tolerate masked, roving militias pretending to be well-trained law enforcement agents" when referring to federal officers. A press release then reinforced that the Governor is targeting federal officers she believes are "untrained, unaccountable" and thus is "banning ICE agents from wearing masks, and protecting residents' privacy from federal overreach[.]" The release also made apparent the law was intended to help illegal immigrants evade federal law enforcement and directed the public to a portal to document interactions with "ICE in New Jersey" to "help the state hold ICE accountable for their actions, including potential violations of the law." That portal, operated by Attorney General Davenport, allows the public to "report incidents involving harmful conduct by, or negative interactions with, federal personnel conducting immigration enforcement in New Jersey" so the Attorney General can consider bringing cases against federal law enforcement. In her confirmation hearing, Attorney General Davenport, under oath, affirmed she would prosecute federal officers for violating state law.

After the law was passed, on April 9, 2026, ICE officers arrested several individuals in New Jersey while wearing masks. In response, Governor Sherrill's Office stated that she "is prepared to take any necessary measures if ICE continues to violate the law … [i]ncluding taking the Trump Administration back to court." Disturbed by the Governor's threats, the Department of Justice's Civil Division sent a formal letter on April 9, 2026 to Attorney General Davenport seeking assurances that the law was not enforceable against federal officers and no officials would attempt to enforce it. Attorney General Davenport responded with a letter on April 17, 2026 via email declaring that the law was constitutional and that federal officers were obligated to comply but refusing to opine on any enforcement actions. Unsatisfied with the lack of a concrete answer, the Department of Justice immediately sought clarity on whether New Jersey would enforce the law given the recent alleged violation. The Department of Justice also sent the Ninth Circuit Court of Appeals' decision enjoining a materially identical California law and asked for a response by April 24, 2026. To this day, Attorney General Davenport continues to refuse to provide assurances that the State of New Jersey will not enforce the law against federal officers.

## II.    Discussion

Plaintiff United States believes it is entitled to a judgment as a matter of law. As the Ninth Circuit observed regarding a similar California law that sought to ban masks and require federal law enforcement officers to "visibly display identification" when "performing their enforcement duties," the challenged New Jersey statutes "seek[] to control [federal officers'] conduct in performing law enforcement operations." *United States v. California*, 173 F.4th 1060, 1067 (9th Cir. 2026). The Ninth Circuit held that the challenged identification requirement "purports to override the federal government's power to determine whether, how, and when to publicly identify its officers," "[a]nd in so doing, it aims to regulate the manner and conditions under which federal agents can enforce federal law." *Id.* Likewise, the New Jersey law seeks to regulate the manner and conditions under which federal officers must operate when conducting their official duties and enforcing federal law. *Id.* States have no power to do that.

In response, New Jersey argues that a facial challenge cannot prevail, the law only minimally burdens federal officers, there is no irreparable harm, and the equities disfavor an injunction. ECF 6 at 2. The Ninth Circuit unanimously rejected these arguments, holding that "if a state law directly regulates the conduct of the United States, it is void irrespective of whether the

regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations." *California*, 173 F.4th at 1067. The Ninth Circuit also held that "irreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity. And 'preventing a violation of the Supremacy Clause serves the public interest.'" *Id.* at 1069 (citation omitted); *see also United States v. California*, 819 F. Supp. 3d 1109, 1122 (C.D. Cal. 2026) (rejecting the facial challenge argument). That resolves this case. New Jersey would have this Court open a circuit split. But nothing the Ninth Circuit did was novel, it was based on binding Supreme Court precedent. The Federal Government incorporates by reference the citations and argument found in the Complaint and believes it will prevail on any dispositive motion.

With regard to Defendants' standing argument, Article III standing requires a plaintiff to demonstrate a concrete injury that is fairly traceable to the conduct of the defendant and judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Pre-enforcement standing is satisfied where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quotation omitted); *see also Consumer Data Indus. Ass'n v. Platkin*, No. 19-cv-19054, 2024 WL 1299256, at *14 (D.N.J. Mar. 27, 2024). The refusal to "disavow the possibility of prosecution" can suffice for an imminent injury, especially for a new law. *Presbytery of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir.1994).

The United States easily satisfies these requirements. First, the United States asserts "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a [state] statute," as the United States has made clear it officers may and have continued to wear masks and will continue to do so even if it violates New Jersey law. *Driehaus*, 573 U.S. at 159 (citation omitted). And as explained above, there is a credible threat of prosecution given the new law, the Governor and Attorney General's statements on this matter, and the refusal to disavow prosecution when directly asked and presented with a violation of the law. That suffices for pre-enforcement standing. Moreover, the very fact that a state is attempting to regulate the conduct of the Federal Government inflicts a "sovereign injury" on the United States. *California*, 173 F.4th at 1069 ("irreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *cf. Arizona v. Yellen*, 34 F.4th 841, 851-53 (9th Cir. 2022); *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000).

This Court should allow the parties to file cross motions for summary judgment on these issues. Plaintiff United States agrees with Defendants' request that the Court waive the applicability of Local Rule 56.1, requiring a statement and responsive statement of material facts.

Very Respectfully,

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

By: /s/ Robert O. Lindefjeld
Robert O. Lindefjeld
Assistant Director

3