BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

ROBERT O. LINDEFJELD
Assistant Director (DC Bar No. 44423)
United States Department of Justice
Enforcement and Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States*

| | |
|---|---|
| THE UNITED STATES OF AMERICA. <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF NEW JERSEY; MIKIE SHERRILL, Governor of New Jersey, in her official capacity; JENNIFER DAVENPORT, Attorney General of New Jersey, in her official capacity. <br><br> Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY CIVIL ACTION NO. 1:26-cv-4755-RMB-MJS <br><br> <u>Civil Action</u> <br><br> MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56 AND LOCAL CIV. R. 56.1 <br><br> BRIEFING SCHEDULE SET BY COURT ORDER |

**TABLE OF CONTENTS**

**Page(s)**

I.  INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF MATERIAL UNDISPUTED FACTS ...................................................... 2

   A.  Governing Principles of Federal Law Enforcement ....................................................... 2

   B.  Challenged New Jersey Law .................................................................................... 5

   C.  Harms To The United States .................................................................................... 8

   D.  Procedural History ................................................................................................ 12

III.  LEGAL STANDARDS .................................................................................................. 13

IV.  ARGUMENT ............................................................................................................... 14

   A.  The Federal Government Has Standing To Challenge The Validity Of S3114 ......... 14

   B.  New Jersey's Law Is Patently Unconstitutional ........................................................ 20

   C.  The United States Suffers Irreparable Harm ............................................................. 27

   D.  The Equities Favor The United States ..................................................................... 30

V.  CONCLUSION .............................................................................................................. 30

*i*

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
  458 U.S. 592 (1982).............................................................................................. 15
*Am. Civil Liberties Union v. Ashcroft,*
  322 F.3d 240 (3d Cir. 2003) ................................................................................. 29
*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ............................................................................................. 13
*Appelmans v. City of Phila.,*
  826 F.2d 214 (3d Cir. 1987)................................................................................. 13
*Arizona v. California,*
  283 U.S. 423 (1931)............................................................................................. 20
*Arizona v. United States,*
  567 U.S. 387 (2012)......................................................................................... 4, 16
*Arizona v. Yellen,*
  34 F.4th 841 (9th Cir. 2022) ................................................................................ 15
*Armstrong v. Exceptional Child Center, Inc.,*
  575 U.S. 320 (2015)............................................................................................. 17
*Babbitt v. United Farm Workers Nat'l Union,*
  442 U.S. 289 (1979)............................................................................................. 14
*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986)............................................................................................. 13
*City of Excondido, Cal. v. Emmons,*
  586 U.S. 38 (2019) .............................................................................................. 25
*CoreCivic, Inc. v. Governor of N.J.,*
  145 F.4th 315 (3d Cir. 2025) ................................................................... 25, 26, 30
*Crow Indian Tribe v. United States,*
  965 F.3d 662 (9th Cir. 2020) ............................................................................... 16
*Elk Grove Unified Sch. Dist. v. Newdow,*
  542 U.S. 1 (2004)................................................................................................. 22
*Geo Grp., Inc. v. Inslee,*
  151 F.4th 1107 (9th Cir. 2025) ............................................................................ 25
*Geo Grp., Inc. v. Newsom,*
  50 F.4th 745 (9th Cir. 2022) ................................................................................ 25
*Goodyear Atomic Corp. v. Miller,*
  486 U.S. 174 (1988)............................................................................................. 20
*Holder v. Humanitarian Law Project,*
  561 U.S. 1 (2010)................................................................................................. 19
*In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6,*
  246 N.J. 462 (2021) ....................................................................................... 18, 19
*In re Debs,*
  158 U.S. 564 (1895)............................................................................................. 17
*Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006)............................................................................................. 26

*Jackson v. Midland Funding, LLC,*
   754 F. Supp. 2d 711 (D.N.J. 2010) ................................................................. 13
*Johnson v. Maryland,*
   254 U.S. 51 (1920) ....................................................................... 21, 24, 25
*Kaucher v. County of Bucks,*
   455 F.3d 418 (3d Cir. 2006) .......................................................................... 13
*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) ..................................................................................... 14
*Marino v. Indus. Crating Co.,*
   358 F.3d 241 (3d Cir. 2004) .......................................................................... 13
*Mayo v. United States,*
   319 U.S. 441 (1943) ..................................................................................... 20
*McCulloch v. Maryland,*
   17 U.S. (4 Wheat.) 316 (1819) ................................................................. 20, 29
*New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff,*
   669 F.3d 374 (3d Cir. 2012) .......................................................................... 29
*North Dakota v. United States,*
   495 U.S. 423 (1990) ..................................................................................... 20
*Presbytery of Orthodox Presbyterian Church v. Florio,*
   40 F.3d 1454 (3d Cir.1994) ........................................................................... 19
*Rowe v. N.H. Motor Transp. Ass'n,*
   552 U.S. 364 (2008) ..................................................................................... 29
*Seila L. LLC v. Consumer Fin. Prot. Bureau,*
   591 U.S. 197 (2020) ....................................................................................... 3
*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996) ....................................................................................... 15
*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ..................................................................................... 14
*Stauffer v. Brooks Bros.,*
   619 F.3d 1321 (Fed. Cir. 2010) ...................................................................... 16
*Steffel v. Thompson,*
   415 U.S. 452 (1974) ..................................................................................... 14
*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
   600 U.S. 181 (2023) ..................................................................................... 25
*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ................................................................................. 14, 15
*Tennessee v. Davis,*
   100 U.S. 257 (1879) ....................................................................................... 3
*United States v. Arlington Cnty.,*
   669 F.2d 925 (4th Cir. 1982) ......................................................................... 16
*United States v. California,*
   173 F.4th 1060 (9th Cir. 2026) ................................................................ *passim*
*United States v. California,*
   819 F. Supp. 3d 1109 (C.D. Cal. 2026) ........................................................... 19
*United States v. California,*
   921 F.3d 865 (9th Cir. 2019) ......................................................................... 22

*iii*

*United States v. City of Arcata,*
  659 F.3d 986 (9th Cir. 2010) ......................................................................... 21, 22
*United States v. City of Phila.,*
  Civ. No. 26-4208, 2026 WL 1906075 ................................................................ *passim*
*United States v. City of Pittsburgh,*
  757 F.2d 43 (3d Cir. 1985)............................................................................. 15
*United States v. Colo. Sup. Ct.,*
  87 F.3d 1161 (10th Cir. 1996) ........................................................................ 16
*United States v. Fresno Cnty.,*
  429 U.S. 452 (1977)...................................................................................... 28
*United States v. Missouri,*
  114 F.4th 980 (8th Cir. 2024) ................................................................. 15, 16, 21
*United States v. Texas,*
  143 U.S. 621 (1892)...................................................................................... 15
*United States v. Town of Windsor,*
  765 F.2d 16 (2d Cir. 1985)............................................................................. 20
*United States v. Virginia,*
  2026 WL 1909995 .................................................................................... *passim*
*United States v. Washington,*
  596 U.S. 832 (2022)....................................................................................... 2
*Vt. Agency of Nat. Res. v. United States ex. rel. Stevens,*
  529 U.S. 765 (2000)...................................................................................... 15

## Constitution

U.S. Const. art. I, § 8, cl. 4.............................................................................. 4
U.S. Const. art. II, § 3 .................................................................................... 3
U.S. Const. art. VI, cl. 2................................................................................. 2

## Statutes

5 U.S.C. § 301............................................................................................... 4
5 U.S.C. § 5901............................................................................................. 5
6 U.S.C. § 211............................................................................................... 3
6 U.S.C. § 252............................................................................................... 3
8 U.S.C. § 1103(a)(2)................................................................................... 4, 5
8 U.S.C. § 1182............................................................................................. 4
8 U.S.C. §§ 1225-29a..................................................................................... 4
8 U.S.C. § 1231............................................................................................. 4
21 U.S.C. § 801 *et seq.*.................................................................................. 3
28 U.S.C. § 509............................................................................................. 4
28 U.S.C. § 531............................................................................................. 3
28 U.S.C. § 561............................................................................................. 3
28 U.S.C. § 599A........................................................................................... 3
29 U.S.C. § 668............................................................................................. 5
40 U.S.C. § 609............................................................................................. 5
Immigration and Nationality Act of 1952, Pub. L. 82–414, ch. 477, 66 Stat. 163 (1952) ........... 4

*iv*

Law Enforcement Officer Protection Act, S. 3114 (SCS),
  222nd Leg., Reg. Sess. (N.J. 2026) ("S4114") ................................................. *passim*
N.J. REV. STAT. §§ 52:17B-97 ..................................................................................... 18
Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091, as amended Pub. L.
  93–253, §1, Mar. 16, 1974, 88 Stat. 50................................................................... 3

**Rules**

D.N.J. Local Civ. R. 56.1............................................................................................. 2
FED. R. CIV. P. 41 ....................................................................................................... 3
FED. R. CIV. P. 56(c) ................................................................................................. 13
INDIVIDUAL R. OF CHIEF JUDGE RENÉE MARIE BUMB E.1 ......................................... 2

**Regulations**

8 C.F.R. § 287.8(c)(2)(iii).......................................................................................... 4
28 C.F.R. § 0.100-0.101............................................................................................. 4
28 C.F.R. § 0.85 ......................................................................................................... 4
41 C.F.R. § 102-34.155............................................................................................... 5

**Other Authorities**

2 J. STORY, COMMENTARIES ON THE CONSTITUTION § 1099 (3d ed. 1858) ................................. 29
13B WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3531.11
  (3d ed. 2010 & Sept. 2025 supp.) ......................................................................16
Anthony Johnson, *NJ Gov. Mikie Sherrill signs law banning ICE agents, police
  from wearing masks,* ABC7 NY (March 25, 2026), https://perma.cc/Q3TH-XEQE...................5
Declaration of Justin Hargis.............................................................................. *passim*
Declaration of Konphet J. Phantharangsy............................................................ *passim*
Declaration of Matthew W. Allen........................................................................ *passim*
Declaration of Stefanie Roddy........................................................................... *passim*
FED. PRAC. & PROC. JURIS. § 3531.11 (3d ed. 2010 & Sept. 2025 supp.) ................................ 16
Joe Strupp, *Masked ICE agents defy Gov. Sherrill ban during arrest in Jackson*,
  Asbury Park Press (Apr. 9, 2026), https://perma.cc/47NJ-58QK.................................. 7
Letter from Brett A. Shumate, U.S. Assistant Attorney General, to Jennifer Davenport,
  New Jersey Attorney General, at 4 (Apr. 9, 2026) ............................................... 7
Letter from Jennifer Davenport, New Jersey Attorney General, to Brett A. Shumate, U.S.
  Assistant Attorney General, at 1 (Apr. 17, 2026) .......................................................... 8
New Jersey Office of the Attorney General, https://perma.cc/VZT3-9U7G ............................... 5
Recorded Tr. of Jennifer Davenport, Senate Judiciary Monday, Feb. 02, 2026, at
  58:20-1:03:30, https://www.njleg.state.nj.us/archived-media/2026/SJU-meeting-list/
  media-player?committee= SJU&agendaDate=2026-02-02-10:30:00&agendaType=
  M&av=A ......................................................................................................... 6
State of New Jersey Press Release, *Governor Sherrill Signs Legislation to Protect
  Constitutional Rights, Keep New Jerseyans Safe* (March 25, 2026), https://perma.cc/
  AHM7-NEFC............................................................................................................ 6

## I.    INTRODUCTION

The law is clear. The Supremacy Clause "forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree." *United States v. California*, 173 F.4th 1060, 1068 (9th Cir. 2026). Yet, the State of New Jersey, through the doublespeak of a law misnamed the "Law Enforcement Officer Protection Act", S. 3114 (SCS), 222nd Leg., Reg. Sess. (N.J. 2026) (hereinafter "S3114"), violates the U.S. Constitution by prohibiting federal officers from wearing masks and requiring identifiers under the threat of state enforcement. Indeed, when the U.S. Department of Justice ("DOJ") asked the New Jersey Attorney General's Office if they would disavow enforcement of S3114, the Office doubled down on the enforceability of the law and the Governor has threatened enforcement.

This Court should join the other courts that have readily concluded that identical laws are patently unconstitutional. *See California*, 173 F.4th at 1067-68 (granting injunction pending appeal against a law requiring federal officers to visibly display identification); *United States v. City of Phila.*, Civ. No. 26-4208, 2026 WL 1906075 (CFK), __ F. Supp. 3d __ (E.D. Pa. July 2, 2026) (granting preliminary injunction against a law banning facial coverings by federal officers and requiring federal officers to identify themselves to people who are subject to an arrest); *United States v. Virginia.*, Civ. No. 26-0545, 2026 WL 1909995 (REP), __ F. Supp. 3d __ (E.D. Va. July 2, 2026) (same). Though Defendants have indicated they will try to muddy the water on the proper standard to be applied, the unanimous three-judge panel of the Ninth Circuit in *California* and the district courts in *City of Phila.* and *Virginia* made clear that *any* regulation is unconstitutional. *Id.*

New Jersey has no authority whatsoever to make these demands of federal law enforcement officers, even if the federal government could comply with the demands with ease. But that aside, the challenged New Jersey law imperils federal officers and operations. The New Jersey law

1

attempts to place federal officers in a situation with two prejudicial, dangerous, and illegal outcomes—either expose themselves to increased doxxing, harassment, evasion, and even violence or face enforcement by zealous state officials. That severely harms federal operations, impedes federal policies, and is contrary to the public interest. Luckily, the Supremacy Clause prevents such harms. This Court should enter judgment and a permanent injunction against this blatantly unconstitutional law.

## II.  STATEMENT OF MATERIAL UNDISPUTED FACTS

The parties agree that there are "no disputed issues of material fact bearing on resolution of" the issues before this Court. ECF 9 at 40 (Letter from New Jersey Attorney General Jennifer Davenport to Court). As a result, the Court has waived the requirement to separately file statements of material facts as mandated by this District's Local Civil Rule 56.1(a) and Rule E.1 of this Court's Individual Rules and Procedures. ECF 10. Nevertheless, to provide context for the present Motion, Plaintiff provides the following statement of material undisputed facts as recited in the Complaint and supported by the attached exhibits.

### A.  Governing Principles of Federal Law Enforcement

The Supremacy Clause of the United States Constitution mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause incorporates principles of Intergovernmental Immunity, and thus, a state enactment is invalid if it "regulat[es] the United States directly or discriminat[es] against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (citation omitted). When there is a conflict with state law, federal law wins.

2

The President has a constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II § 3. The authority to discharge that duty "extend[s] over the whole territory of the Union, acting upon the States and upon the people of the States." *Tennessee v. Davis*, 100 U.S. 257, 263 (1879). Because "no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 204 (2020). In executing the laws, the Federal Government "can act only through [those] officers and agents," who must in turn "act within the States." *Davis*, 100 U.S. at 263. Accordingly, federal law enforcement activities necessarily take place within several States, including in New Jersey.

Federal law enforcement agencies, including those within the DOJ and the Department of Homeland Security ("DHS"), are created by federal law. *See, e.g.*, 28 U.S.C. §§ 531 (Federal Bureau of Investigation ("FBI")), *id.* § 561 (U.S. Marshals Service), *id.* § 599A (Bureau of Alcohol, Tobacco, Firearms and Explosives); 6 U.S.C. § 252 (U.S. Immigration and Customs Enforcement ("ICE")); 6 U.S.C. § 211 (U.S. Customs and Border Protection ("CBP")); Reorganization Plan No. 2 of 1973, 38 F.R. 15932, 87 Stat. 1091, as amended Pub. L. 93–253, §1, Mar. 16, 1974, 88 Stat. 50 (Drug Enforcement Administration ("DEA")). All law enforcement officers within these agencies have the power to swear out and execute arrest and search warrants based upon probable cause. FED. R. CIV. P. 41. Different law enforcement agencies within the Federal Government have different, but sometimes overlapping, authorities for the types of crimes and offenses they investigate and prosecute.

For example, the DEA enforces the Nation's controlled substances laws. *See generally* 21 U.S.C. § 801, *et seq.* In carrying out that mission, the DEA investigates and aids in the prosecution of violators of controlled substances laws; seizes and forfeits assets derived from illicit drug

trafficking; and manages a national drug intelligence program in cooperation with federal, state, local, and foreign officials. *See* 28 C.F.R. § 0.100-0.101. The FBI is charged with rooting out violent crime, defending the homeland against terrorist attacks, and investigating and combating cybercrime, among other duties. *See id.* § 0.85. It conducts extensive operations throughout the country and in partnership with federal, state, local, and foreign officials. DHS and its component agencies ICE and CBP are primarily responsible for enforcing the nation's immigration laws. Those laws are primarily contained in the Immigration and Nationality Act of 1952 (as amended), Pub. L. 82–414, ch. 477, 66 Stat. 163 (1952) (codified at 8 U.S.C. § 1101*, et seq.*) ("INA"), and, pursuant to Congress's power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, make up the framework for the "governance of immigration and alien status." *See Arizona v. United States*, 567 U.S. 387, 395 (2012). Among other authorities, the INA gives the Executive Branch broad authority to inspect, investigate, arrest, detain, and remove aliens who are unlawfully in the United States. *See, e.g.*, 8 U.S.C. §§ 1182, 1225-29a, 1231.

To fulfill the foregoing mandates, the head of each agency has the power to govern the agency's affairs and direct its agents' activities. *See, e.g.*, 5 U.S.C. § 301 (authorizing the head of an Executive or military department to "prescribe regulations for the government of his department [and] the conduct of its employees"); 28 U.S.C. § 509 (vesting all functions of other officers, agencies, and employees of the DOJ in the Attorney General); 8 U.S.C. § 1103(a)(2) (authorizing the DHS Secretary to "control, direct[], and supervis[e]" all DHS employees). Included within that power to govern the agencies is the power to determine how agents must conduct themselves when engaged in official duties in accordance with federal law. Federal law similarly empowers the Executive to provide for and dictate federal law enforcement officers' uniforms and equipment, along with vehicle identification requirements, when carrying out their official duties. *See, e.g.*,

4

*id.*; 5 U.S.C. § 5901 (directing the head of each federal agency to furnish its employees a uniform or an allowance for a uniform); 29 U.S.C. § 668 (requiring heads of federal agencies to, as part of their occupational safety and health programs, acquire, maintain, and require the use of safety equipment, personal protective equipment, and devices reasonably necessary to protect employees); 40 U.S.C. § 609 (stating motor vehicle identification requirements but noting that regulations "may provide for exemptions when conspicuous identification would interfere with the purpose for which a vehicle is acquired and used"); 41 C.F.R. § 102-34.155 (stating that "[m]otor vehicles used primarily for investigative, law enforcement, intelligence, or security duties have an unlimited exemption from displaying U.S. Government license plates and motor vehicle identification when identifying these motor vehicles would interfere with those duties").

## B.  Challenged New Jersey Law

On March 25, 2026, New Jersey Governor Mikie Sherrill signed S3114 into law.[1] Governor Sherrill declared, in reference to federal officers, that "we're not going to tolerate masked, roving militias pretending to be well-trained law enforcement agents."[2] A press release from the Governor then reinforced that the Governor is targeting federal officers she believes are "untrained, unaccountable" and thus is "banning ICE agents from wearing masks, and protecting residents' privacy from federal overreach[.]"[3] The Governor's press release also directed the public to a portal to document interactions with "ICE in New Jersey" to "help the state hold ICE accountable for their actions, including potential violations of the law."[4] That portal, operated by New Jersey Attorney General Davenport, allows the public to "report incidents involving harmful

---

[1] Anthony Johnson, *NJ Gov. Mikie Sherrill signs law banning ICE agents, police from wearing masks,* ABC7 NY (Mar. 25, 2026), https://perma.cc/Q3TH-XEQE.
[2] *Id.*
[3] State of New Jersey Press Release, *Governor Sherrill Signs Legislation to Protect Constitutional Rights, Keep New Jerseyans Safe* (Mar. 25, 2026), https://perma.cc/AHM7-NEFC.
[4] *Id.*

conduct by, or negative interactions with, federal personnel conducting immigration enforcement in New Jersey."[5] In her confirmation hearing, New Jersey Attorney General Davenport, under oath, affirmed that she would prosecute federal officers for violating state law.[6]

Section 2 of S3114 defines the term "law enforcement officer," expressly encompassing federal officers:

> a member of *any federal*, State, county, or municipal law enforcement agency, department, or division of those governments who is statutorily empowered to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the laws of this State *or of the United States*.

S3114 § 2 (emphasis added). The law applies to all federal law enforcement, including the FBI and the DEA. The law also applies *only* to law enforcement, not the general public.

Section 3(a) of S3114 then states that "a law enforcement officer *shall not* wear a mask or disguise when interacting with the public while in the performance of the officer's official duties." S3114 § 3(a) (emphasis added). Subsection (3)(b) provides narrow and vague exceptions to the prohibition, including undercover assignments, officers who have received threats of retaliation, wearing of clear plastic face shields, wearing of surgical N95 respirators, wearing of air filtration masks to prevent smoke inhalation, wearing of masks designed to protect exposure to cold weather, and the wearing of gas masks to protect against exposure to biological or chemical agents. S3114 § 3(b). It is unclear who determines whether these exceptions are met.

Section 4(a) next states that "[e]very law enforcement officer *shall provide* sufficient identification prior to *detaining or arresting* an individual. S3114 § 4(b) (emphasis added). Sufficient identification includes a "department-issued uniform bearing the agency insignia;" "a

---

[5] Portal, New Jersey Office of the Attorney General, https://perma.cc/VZT3-9U7G.
[6] Recorded Tr. of Jennifer Davenport, Senate Judiciary Monday, Feb. 02, 2026, at 58:20-1:03:30, https://www.njleg.state.nj.us/archived-media/2026/SJU-meeting-list/media-player?committee=SJU&agendaDate=2026-02-02-10:30:00&agendaType=M&av=A.

"card bearing the officer's photograph and identifying information;" "a badge, tag, label, or other department-issued identification which identifies the officer by number; or the officer verbally discloses, in a clear and audible manner, the officer's name and the official name of the law enforcement agency by which the officer is employed." *Id.* Again, Subsection (4)(b) and (c) have narrow and vague exceptions for information that may compromise investigations, where a supervisor determines stealth is necessary, where the officer believes his or her safety is at risk, or where providing information would "prohibit a law enforcement officer in plain clothes or unmarked vehicles from intervening in urgent matters of public safety." *Id.* Section 5 commands that the New Jersey Attorney General "*shall* issue guidelines or a directive necessary to effectuate the provisions of this act. S3114 § 5 (emphasis added). There is no discretion provided to the state attorney general on whether to regulate federal law enforcement. Section 6 of S3114 made the law effective immediately. S3114 § 6.

Shortly after the law was passed, on April 9, 2026, ICE officers who allegedly wore masks arrested several individuals in New Jersey.[7] In response, Governor Sherrill's Office stated that she "is prepared to take any necessary measures if ICE continues to violate the law … [i]ncluding taking the Trump Administration back to court." *Id.* This statement prompted the DOJ to send a letter to the New Jersey Attorney General seeking confirmation that "no New Jersey official will attempt to enforce this law against our federal officers."[8] In response, New Jersey Attorney General Davenport confirmed that the new state law did indeed regulate federal law enforcement officials:

---

[7] Joe Strupp, *Masked ICE agents defy Gov. Sherrill ban during arrest in Jackson*, Asbury Park Press (Apr. 9, 2026), https://perma.cc/47NJ-58QK.
[8] Letter from Brett A. Shumate, U.S. Assistant Attorney General, to Jennifer Davenport, New Jersey Attorney General, at 4 (Apr. 9, 2026). A copy of this letter is attached as Ex. 1 to the Declaration of Robert O. Lindefjeld (July 27, 2026) ("Lindefjeld Decl.").

> Let me be clear: *the federal government is not above the law*. The Law Enforcement Officer Protection Act applies to *all* law enforcement—whether *federal*, state, or local—in New Jersey, and we expect *all* officers in the State to comply with the law.[9]

The New Jersey Attorney General refused to disavow enforcement or explain whether and how the law was enforceable. *Id.*

Unsatisfied with the lack of a concrete answer on whether New Jersey would enforce the law given the recent alleged April 9 violation, the DOJ immediately sent an email seeking clarity on that issue. The email also attached a copy of the Ninth Circuit's *California* decision enjoining a materially identical California identification law. New Jersey Attorney General Davenport waited until April 24, 2026, to respond to that email and demanded a more formal letter. At the time of the filing of this lawsuit, and indeed even as of the date of this Motion's filing, New Jersey Attorney General Davenport has refused to provide assurances that the State of New Jersey will not enforce the new state law against federal officers. Pre-Motion Letter (ECF 6).

## C.  Harms To The United States

To be clear, Federal law enforcement agencies cannot and will not comply with the challenged Act, which is unconstitutional and recklessly disregards officer safety and federal operational needs. Declaration of Matthew W. Allen ¶ 20 ("Allen Decl."); Declaration of Stefanie Roddy ¶ 14 ("Roddy Decl."). Unfortunately, doxxing, harassment, threats, and even violence against federal agents for simply doing their jobs is increasingly common. Declaration of Konphet J. Phantharangsy ¶ 19 ("Phantharangsy Decl."); Declaration of Justin Hargis ¶ 6 ("Hargis Decl."); Roddy Decl. ¶ 9. While such threats have always existed, a volatile political environment and technological advancements have increased such threats exponentially, requiring the use of tactics

---

[9] Letter from Jennifer Davenport, New Jersey Attorney General, to Brett A. Shumate, U.S. Assistant Attorney General, at 1 (Apr. 17, 2026) (emphasis added). A copy of this letter is attached as Ex. 2 to Lindefjeld Decl.

to mitigate the harm to officer safety and operational effectiveness. Phantharangsy Decl. ¶ 37; Allen Decl. ¶ 15; Hargis Decl. ¶¶ 7-8; Roddy Decl. ¶ 9.

Increasingly, individuals photograph, film, and publish online federal enforcement actions and include the personal identities of federal officers. Phantharangsy Decl. ¶ 20; Hargis Decl. ¶ 7; Roddy Decl. ¶ 9. The photographs and films are posted online for the sole purpose of intimidating and harassing government employees and are directly used by members of local organized crime and transnational criminal organizations in serious and potentially deadly ways. Phantharangsy Decl. ¶ 20; Allen Decl. ¶ 15; Hargis Decl. ¶ 7.

Doxxing of federal officers has also been encouraged at protests. Phantharangsy Decl. ¶ 21. A recent leak of over 14,000 officers personal information was sent to one of these sites, which has publicly posted their identities. Hargis Decl. ¶¶ 9(k), ¶ 9(m). Indeed, some individuals may take pictures of officers' faces and running those pictures through facial recognition applications that will search online in order to identify them. Phantharangsy Decl. ¶ 36; Allen Decl. ¶¶ 15-16; Hargis Decl. ¶¶ 7, 13. Once a match is made, they will continue to search for family members, including children. Phantharangsy Decl. ¶ 36; Allen Decl. ¶ 15; Hargis Decl. ¶¶ 6, 9(b), 9(e), 9(j). The agitators then disseminate this information online, allowing bad actors to track, harass, and obstruct law enforcement. Phantharangsy Decl. ¶ 20; Allen Decl. ¶ 15; Hargis Decl. ¶ 7; Roddy Decl. ¶ 9. If these bad actors can identify individual officers and agents, they have additional means to harass and obstruct law enforcement. Phantharangsy Decl. ¶ 36; Allen Decl. ¶ 15; Roddy Decl. ¶ 9. Agitators routinely use this information to follow officers, block their cars, ram them, assault them, and alert others to their presence so targets can flee. Phanthangsy Decl. ¶¶ 27-28; Allen Decl. ¶ 17.

Threats against officers and agents have increased substantially in number since 2024. ICE officers alone are facing "an 8,000% increase in death threats" against them and a "1,000% increase in assaults" against them. Phantharangsy Decl. ¶ 22. Officers and agents have been followed home from work. *Id.* ¶¶ 23, 25, 27. On January 12, 2026, ICE employees at the Elizabeth, New Jersey office reported having received harassing phone calls and hate mail, including a drawing of a swastika that said, "Nazi Brownshirts were within the law too. Your names will be released." *Id.* ¶ 34. In June 2026, FBI arrested an agitator in front of Delaney Hall who was angrily threatening the lives of an officer and his entire family. Phantharangsy Decl. ¶ 24. On July 21, 2026, while ICE officers were arresting an alien, another agitator approached the federal officers and began yelling at them. *Id.* ¶ 25. The agitator was later identified as someone who had followed officers from the office and was observed filming them. *Id.* During an operation in Passaic, New Jersey, an unknown female drove an SUV toward federal officers while they were effecting an arrest, came to an abrupt stop, and while federal officers were handcuffing the alien, threw a drink containing an unknown liquid at the officers. *Id.* ¶ 26. And in Newark, New Jersey, an ICE officer reported that a vehicle registered to an illegal immigration target was parked outside scoping the officer's private home while his wife and son were inside the home. *Id.* ¶ 29. These are but a small sampling of the safety threats federal officers experience every day in the field.

While the use of facial coverings and removing individual identifiers is not a cure all, these tactics can be essential to mitigate these growing risks. Phantharangsy Decl. ¶¶ 37-39; Allen Decl. ¶ 15; Masking can prevent agitators from identifying and tracking officers, especially using facial recognition or other tools. Phantharangsy Decl. ¶ 37; Allen Decl. ¶ 15; Hargis Decl. ¶ 15; Roddy Decl. ¶ 13. And while officers almost always wear tags identifying them as federal officers (unless

operating in plainclothes), removing personal identifiers may similarly prevent agitators from identifying individual officers. Phantharangsy Decl. ¶ 42; Allen Decl. ¶ 15; Roddy Decl. ¶ 9.

Protecting officers' personal identities is particularly important during high-risk enforcement operations involving individuals with violent criminal histories, gang affiliations, transnational criminal organizations, and known or suspected terrorists. Phantharangsy Decl. ¶ 37. Masking and removing personal identifiers and agency affiliation also prevents suspects from identifying officers who may be involved in future enforcement actions. *Id.* ¶ 42. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, masking is sometimes critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. *Id.*

New Jersey's law's requirements would also thwart plainclothes surveillance—the whole point of which is *not* to reveal officers' identities to mitigate the risk of evasion by targets. *Id.* ¶ 40. Furthermore, by banning masks or disguises, the law would enable suspects to identify officers who may be involved in future undercover operations. *Id.* ¶ 42.

Officers also need flexibility to determine when to announce their identities and the agency they work for. Hargis Decl. ¶ 20; Roddy Decl. ¶ 13. Because of the sanctuary policies of states like New Jersey, officers often have to engage in "at-large" arrests in the community of dangerous criminal aliens who have been released by the State, which increases the danger to the officers, the general public, and to the aliens themselves. Compl. ¶ 63. During operations, premature announcements can result in targets fleeing or agitators intervening. *Id.* Forcing officers to clearly state their affiliation and identities in tense situations can escalate situations further and result in harm to the officers, the targets of law enforcement, and the public. *Id.* Interfering with law

11

enforcement and helping targets evade enforcement can also threaten public safety, especially when the target is a criminal (which is often the case). *Id.*

When officers are doxxed and threatened, federal agencies must expend significant resources to protect those officers and otherwise mitigate risks to operations. Those resources could otherwise be used to fulfill the agencies' primary missions. *See* Phantharangsy Decl. ¶ 45. The threat of state enforcement, whether criminal or civil, for noncompliance with New Jersey's law will only further exacerbate the chilling effect of these laws. Phantharangsy Decl. ¶ 43.

### D. Procedural History

On April 29, 2026, the United States sued the State of New Jersey, New Jersey Attorney General Davenport, and New Jersey Governor Sherrill to enjoin enforcement of S3114 against federal law enforcement officers as an unlawful regulation of the Federal Government and invalid under the Supremacy Clause. Compl. (ECF 1) ¶¶ 83, 86-87. The Complaint seeks a declaration that S3114 violates the Supremacy Clause and seeks an injunction against Defendants preventing them from investigating or enforcing S3114 against federal agencies and federal officers.

On June 10, 2026, Defendants filed a Letter with the Court, requesting a pre-motion conference before filing a motion to dismiss, or in the alternative, a motion for summary judgment. Pre-Motion Letter (ECF 6). In that letter, Defendants indicated that they intend to seek dismissal based on a lack of Article III standing, alleging that Plaintiff has not suffered an injury-in-fact. ECF 6, at 33. As to the merits, (1) Defendants contend that Plaintiff cannot establish "that no set of circumstances exists under which the statute would be valid"; and (2) Defendants contend that the challenged New Jersey law merely imposes a "general rule of conduct" that "might affect incidentally the mode of carrying out the employment." *Id.* at 33-34. As to the requested permanent injunction, Defendants argue that Plaintiff suffers no irreparable harm "largely because it can

simply defend against any enforcement proceedings on an as-applied basis" and that the balancing of interests do not weigh in favor of granting the injunctive relief that Plaintiff has requested. *Id.*

On June 17, 2026, counsel for Defendants submitted another Letter to the Court explaining that the parties agreed that the issues pending before the Court could be resolved on cross motions for summary judgment because there are no genuine issues of material fact that might preclude such disposition. ECF 9 at 39. The Court agreed with the parties' proposal by Text Order dated June 29, 2026, and set a briefing schedule for cross motions for summary judgment. ECF 10.

### III.   LEGAL STANDARDS

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 248 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex*, 477 U.S. at 323. "The summary judgment standard is not affected when the parties file cross-motions for summary judgment. *Jackson v. Midland Funding, LLC*, 754 F. Supp. 2d 711, 713 (D.N.J. 2010) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)).

## IV.  ARGUMENT

### A.  The Federal Government Has Standing To Challenge The Validity Of S3114

Article III standing requires a plaintiff to demonstrate a (i) concrete injury that is (ii) fairly traceable to the conduct of the defendant and (iii) judicially redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To satisfy this requirement based on the threatened enforcement of a law, "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Rather, that requirement is satisfied where the plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

The United States easily satisfies these requirements. First, the United States asserts "an intention to engage in a course of conduct arguably affected with a constitutional interest," namely, to act through its officers in accordance with its own policies and federal law where that same conduct is proscribed by a local ordinance. *See Driehaus*, 573 U.S. at 159 (citation omitted). Federal law enforcement agencies have said they will not comply and will continue to allow their officers to wear masks and remove individual identifiers. Allen Decl. ¶ 20; Roddy Decl. ¶ 14.

New Jersey has made it clear that the state intends to enforce its new law against the Federal Government. Indeed, New Jersey Governor has explicitly threatened to take "necessary measures" to enforce the state law against federal officers, including taking the Federal Government to Court. Strupp, *supra* note 8. In lockstep with these loud threats, the New Jersey Attorney General, warned in her letter to the DOJ that "the federal government is not above [New Jersey state] law" and

14

demanded compliance from all federal officers. Letter, *supra* note 10. In response to inquiries, New Jersey had steadfastly refused to disavow enforcement. *Id.*

Oddly, based on New Jersey's pre-motion letter, Defendants argue that it is not clear the United States will engage in conduct that will violate the law given the exceptions in the statute. Pre-Motion Letter (ECF 6). But the exceptions are narrow, vague, and it is unclear who decides whether they are met. Indeed, it is unlikely New Jersey would have passed this law if they thought it did not cover ongoing federal conduct. The Governor said as much when she signed the legislation into law. Strupp, *supra* note 8. And federal officers will continue to wear masks and not identify themselves in the performance of their duties in their discretion as allowed by federal policies. In fact, after the law passed, ICE agents allegedly wearing masks arrested individuals. *Id.* It is not apparent what exception would apply in that instance, and the Governor said this incident was a violation that should be pursued. *Id.* Clearly, federal officers are planning to engage in conduct that would run afoul of this law, and leadership in New Jersey has clearly stated it will oppose such conduct.

As to the immediacy of the injury, there are two sources of harm for the Federal Government. *First*, any time federal law is violated or the Federal Government is regulated, it suffers a sovereign injury. *See United States v. California*, 173 F.4th at 1069 ("[I]rreparable harm necessarily results from allowing California to enforce a law invalid under the doctrine of intergovernmental immunity."); *Arizona v. Yellen*, 34 F.4th 841, 851-53 (9th Cir. 2022). As the Supreme Court stated, "[i]t is beyond doubt" that a complaint "asserts an injury to the United States" if it alleges an "injury to [U.S.] sovereignty arising from violation of its laws." *Vt. Agency of Nat. Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 771 (2000); *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982); *see also United States v. City of*

15

*Pittsburgh*, 757 F.2d 43, 45 (3d Cir. 1985) (finding "injury to [United States'] sovereign rights sufficient to have standing to sue in the district court"). The Supreme Court has long recognized that "[t]he Federal Government can bring suit in federal court against a State" to "ensur[e] the State['s] compliance with federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *United States v. Texas*, 143 U.S. 621, 644–45 (1892)).

On its face, New Jersey's law violates the Supremacy Clause, which causes a sovereign injury. That suffices. In *United States v. Missouri*, 114 F.4th 980 (8th Cir. 2024), the court of appeals addressed the question of whether the Federal Government had standing to challenge a state law statute that facially violated the Supremacy Clause. In rejecting the State of Missouri's argument that the Federal Government lacked an injury-in-fact, the Eighth Circuit explained:

> Interference with the federal government's interest in enforcing federal law is sufficient to establish that the Act's implementation injured the United States. Whether the United States is entitled to relief from that injury is a question on the merits of the dispute.

*Id.* at 985 (Missouri's statute classifying various federal firearms laws as infringements of the Second Amendment was a "concrete and particularized" injury to the United States by violating the Supremacy Clause) (citing *United States v. Colo. Sup. Ct.*, 87 F.3d 1161, 1165 (10th Cir. 1996), and *Crow Indian Tribe v. United States*, 965 F.3d 662, 676 (9th Cir. 2020)); *Stauffer v. Brooks Bros.*, 619 F.3d 1321, 1325 (Fed. Cir. 2010) ("[A] violation of [the] [federal] statute inherently constitutes an injury to the United States .... The parties have not cited any case in which the government has been denied standing to enforce its own law."); *United States v. Arlington Cnty.*, 669 F.2d 925, 929 (4th Cir. 1982) ("The United States can sue to enforce its policies and laws, even when it has no pecuniary interest in the controversy."); *accord* 13B WRIGHT & MILLER, FED. PRAC. & PROC. JURIS. § 3531.11 (3d ed. 2010 & Sept. 2025 supp.) ("Standing *to pursue the*

16

*general interests of the public* is easily recognized when federal officials responsible for enforcing specific statutory schemes bring suit under the aegis of the statute." (emphasis added)).

Originating in the Federal Government's equitable right to sue to protect its sovereign interests, the Federal Government has for *centuries* had standing to seek equitable relief in the federal courts to challenge state statutes that facially violate the Supremacy Clause. For example, in *Arizona*, 567 U.S. at 393, the Federal Government invoked the federal court's equity jurisdiction against the State of Arizona—as the Federal Government is doing so here against the State of New Jersey—seeking to enjoin enforcement of a statute that violated the Supremacy Clause, even though the statute at issue in *Arizona* had not yet taken effect. *See also In re Debs*, 158 U.S. 564 (1895) (Federal Government has an inherent right to invoke the equitable jurisdiction of the courts to protect the general welfare, remove obstructions to its sovereign functions, and enforce federal supremacy over interstate channels.); *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."). That suffices for standing.

*Second*, the United States is also injured because New Jersey is threatening to enforce its unconstitutional law against federal officers in the performance of their duties. Federal officers have been facing a significant rise in doxxing, harassment, and assaults in the field. Phantharangsy Decl. ¶ 19; Hargis Decl. ¶ 6; Roddy Decl. ¶ 9; *see also Virginia*, 2026 WL 1909995, at **4-6. This can even result in evading law enforcement and undermining operations. Phantharangsy Decl. ¶ 40. As a result, in their discretion federal agencies permit officers to sometimes mask or remove IDs for officer safety, to include prevention of doxxing and in cases where operationally necessary like undercover operations. *See* Phantharangsy Decl. ¶ 38; Hargis Decl. ¶ 15. New Jersey's law

17

puts officers to a Hobson's choice—either forgo these important safety measures or face enforcement by New Jersey. Obviously enforcing an unconstitutional law against federal officers is a concrete harm to the United States. It also disrupts and chills federal operations. Phantharangsy Decl. ¶ 43. And this is why every case to decide this issue has found pre-enforcement standing and even irreparable harm for a preliminary injunction before *any* actions were taken by the defendants. *California*, 173 F.4th at 1069; *City of Phila.*, 2026 WL 1906075, at *13; *Virginia*, 2026 WL 1909995, at *12.

New Jersey may attempt to argue this law is different because it says, "[t]he Attorney General shall issue guidelines or a directive necessary to effectuate the provisions of this act." S3114 § 5. New Jersey has yet to raise this issue despite the DOJ highlighting it in its letter. *See* Letter, *supra* note 9. In any event, that provision does not help New Jersey, because the law *mandates* the New Jersey Attorney General to issue directives to effectuate the regulation of federal officers. The Attorney General of New Jersey has broad authority to issue directives and guidelines to state law enforcement and prosecutors who can then potentially investigate, arrest, and charge federal officers with violations. N.J. REV. STAT. §§ 52:17B-97-110; 52:17B-4(d); *In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6*, 246 N.J. 462, 482–83, 487–89 (2021).

The fact that the New Jersey Attorney General has not disavowed enforcement or claimed that the law is unenforceable demonstrates the ongoing threat to federal officers. If New Jersey had disavowed any enforcement authority in this law, that would be one thing. The United States would accept a binding stipulation that the law is unenforceable. But New Jersey has steadfastly refused to disavow enforcement. Indeed, in signing this law, Governor Sherrill declared her desire to actively regulate federal officers she believes are "untrained, unaccountable" and thus New Jersey is to "banning ICE agents from wearing masks and protecting residents' privacy from

18

federal overreach." Johnson, *supra* note 2. The Governor's press release also directed the public to a portal to report interactions with "ICE in New Jersey" to "help the state hold ICE accountable for their actions, including potential violations of the law." Press Release, *supra* note 4.

That portal, operated by the New Jersey Attorney General's office, allows the public to "report incidents involving harmful conduct by, or negative interactions with, federal personnel conducting immigration enforcement in New Jersey," so the New Jersey Attorney General can consider bringing cases against federal law enforcement. Portal, *supra* note 6. Indeed, under oath, New Jersey Attorney General Davenport made clear in her confirmation hearing that she would prosecute federal officers for violating state law. Recorded Tr., *supra* note 7. And after ICE who allegedly wore masks arrested a man in New Jersey, the Governor likewise threatened enforcement. Strupp, *supra* note 8.

As previously explained, the DOJ sent a letter earlier this year seeking assurances there would not be enforcement and raised this issue. Letter, supra note 9. The DOJ further questioned whether there could be enforcement under the law. *Id.* Yet, when given the opportunity to disavow, New Jersey Attorney General Davenport deflected and claimed the law must be followed and did not answer follow-up inquiries. Even in response to this lawsuit, New Jersey still refuses to disavow. https://www.njoag.gov/statement-from-attorney-general-davenport-on-u-s-department-of-justice-challenge-to-new-jersey-law-enforcement-officer-protection-act/ (last visited July 27, 2026). In New Jersey's pre-motion letter submitted to this court, New Jersey Attorney General Davenport once again passed over the opportunity to disavow and has yet to do so. Pre-Motion Letter (ECF 6).

Such refusal to disavow, especially for a recently passed law, satisfies the immediate threat of enforcement requirement and demonstrates standing. *See Holder v. Humanitarian Law Project*,

19

561 U.S. 1, 15 (2010) (finding that a group of plaintiffs sufficiently alleged a "credible threat" of enforcement in part because the Government declined to disavow prosecuting them if they resumed their support of the designated terrorist organizations); *United States v. California*, 819 F. Supp. 3d 1109, 1121 (C.D. Cal. 2026) (noting that "California has not disavowed its intent to enforce the two challenged Acts against federal officers[,]" which "is strong evidence that the state intends to enforce the law and that [plaintiff] face[s] a credible threat" (internal quotations and citation omitted)); *Presbytery of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1468 (3d Cir.1994). Similar evidence was more than sufficient for pre-enforcement standing in similar cases. *City of Phila.*, 2026 WL 1906075, at *7–8 (similar statements and refusal to disavow); *Virginia*, 2026 WL 1909995, *9 ("Virginia declined to disavow enforcement of the Mask/Identity Law once it became effective on July 1, 2026, and there is no reason to believe Virginia will not enforce the law it passed in May."). For all of these reasons, Plaintiff United States has standing to bring this suit.

## B.  New Jersey's Law Is Patently Unconstitutional

Under the Supremacy Clause, States have "no power" to "in any manner control[] the operations of" the Federal Government. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 436 (1819); *see Mayo v. United States*, 319 U.S. 441, 445 (1943) ("[T]he activities of the Federal Government are free from regulation by any state."). The intergovernmental immunity doctrine encapsulates this principle. A state or local law violates intergovernmental immunity if it "regulates the United States directly," *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion), "unless Congress provides 'clear and unambiguous' authorization for such regulation," *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 175 (1988) (citation omitted); *United States v. Town of Windsor*, 765 F.2d 16, 18 (2d Cir. 1985) ("Absent congressional consent, direct

20

state regulation of the activities of the Government is barred by the Supremacy Clause."). As the Supreme Court put it nearly a century ago: "The United States may perform its functions without conforming to the police regulations of a state." *Arizona v. California*, 283 U.S. 423, 451 (1931).

Furthermore, "intergovernmental immunity . . . forbids States from regulating the federal government *qua* government and from controlling federal governmental functions in any manner and to any degree." *California*, 173 F.4th at 1068. An act that "applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers . . . directly regulates conduct reserved to sovereigns[]" and is impermissible under the Supremacy Clause. *California*, 173 F.4th at 1068.

Importantly, the prohibition against direct state regulation (in the absence of Congressional authorization, something no one claims is present here), is absolute. Courts cannot apply balancing tests or ask how great the intrusions on federal operations are, because "[n]o other adjustment of competing enactments or legal principles is possible." *Mayo*, 319 U.S. at 445. States cannot control federal operations even if state regulation would not meaningfully impair federal functions and indeed, even if it would simply replicate federal requirements. *See* United States v. City of Arcata, 629 F.3d 986, 991-92 (9th Cir. 2010) ("A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law."). Simply put, "[t]he United States may perform its functions without conforming to the police regulations of a state." *Arizona*, 283 U.S. at 451.

The three courts that have decided the issue presently before this Court have rejected nearly identical laws to the one that New Jersey champions here. In reaching its unanimous decision to issue an injunction pending appeal, the Ninth Circuit in *California* expressly rebuffed the state's attempt to impose identification requirements on federal law enforcement despite the state's pleas

21

that such requirements constituted merely an "incidental burden" on the Federal Government. In rejecting the "incidental burden" label, the Ninth Circuit was very clear that the identification requirements imposed on federal law enforcement were an impermissible regulation of the Federal Government:

> [I]f a state law directly regulates the conduct of the United States, it is void irrespective of whether the regulated activities are essential to federal functions or operations, and irrespective of the degree to which the state law interferes with federal functions or operations.

*California*, 173 F.4th at 1067; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 36-37 (2004) (O'Connor, J., concurring) ("There are no *de minimis* violations of the Constitution--no constitutional harms so slight that the courts are obliged to ignore them."); *United States v. California*, 921 F.3d 865, 883 (9th Cir. 2019) (noting, in the context of a discrimination claim, that "Supreme Court case law compels the rejection of a *de minimis* exception to the doctrine of intergovernmental immunity."); *City of Arcata*, 629 F.3d at 991-92 ("A state or local law that directly regulates the conduct of the federal government or discriminates against it is invalid, even if it is no more restrictive than federal law.").

The district court in *Virgina* reached the same conclusion. Agreeing with the Ninth Circuit's decision that reliance on an "incidental burden" was entirely misplaced, the Virginia district court firmly held that the state's mask ban and identification requirements were patently unconstitutional:

> The Mask/Identity Law requires that federal law enforcement officers satisfy additional requirements placed on them by Virginia—identification requirements, and masking requirements—which are not required under federal law, and which the federal authorities specifically say they need not meet. That offends the principle of intergovernmental immunity that forecloses application of the State law here.

*Virginia*, 2026 WL 1909995, at *10. The Pennsylvania district court in the *City of Phila.* case reached the same conclusion and enjoined a local ordinance attempting to ban masks worn by

22

federal law enforcement and imposing identification and vehicle marking requirements. *City of Phila.*, 2026 WL 1906075, at *10-11.

The New Jersey law is likewise attempting to facially regulate federal officers in violation of the Supremacy Clause. The law applies to "law enforcement officer[s]," which is defined as "a member of *any federal*, State, county, or municipal *law enforcement agency, department, or division* of those governments who is statutorily empowered to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the laws of this State or of the *United States*." S3114 § 2 (emphasis added). This means the law applies to every federal law enforcement officer operating in New Jersey, from ICE to the FBI.

This law dictates that any "law enforcement officer shall not wear a mask or disguise when interacting with the public while in the performance of the *officer's official duties*." S3114 § 3.a. The law thus only applies to officers when they are performing their core law enforcement duties, not if they are operating in their private capacities. Furthermore, the law requires "[e]very law enforcement officer [to] provide sufficient identification prior to *detaining or arresting an individual*." S3114 § 4.a. The law then states when that requirement is satisfied: "the officer is dressed in a department-issued uniform bearing the agency insignia," "the officer demonstrates a department-issued identification card bearing the officer's photograph and identifying information," "the officer demonstrates a badge" or similar insignia "which identifies the officer by number," or "the officer verbally discloses, in a clear and audible manner, the officer's name" and agency. *Id.* So the identification requirement requires the officers to engage in conduct or wear uniforms while actively detaining someone in the performance of their duties, something that is quintessentially a core function. Indeed, New Jersey's law goes so far as "to override the federal government's power to determine whether, how, and when to publicly identify its officers."

23

*California*, 173 F.4th at 1067. If that is not an unconstitutional regulation of federal officers, it is unclear what would be.

Based on New Jersey's pre-motion letter, Defendants appear to argue that a facial challenge fails because they can validly regulate federal officers under this law in some circumstances. But because the ban on direct state regulation is absolute—and does not depend on burden analysis or any other fact-specific considerations—this law has no permissible applications against federal officers. As *California* makes clear, states cannot regulate the Federal Government at all regardless of the impact. *Id.* And it cannot be that federal officers have to wait to be prosecuted and then affirmatively defend their actions in every case. The United States can clearly bring facial challenges as every court to review these laws has concluded. *Id.* at 1066; *City of Phila.*, 2026 WL 1906075, at *8; *Virginia*, 2026 WL 1909995, at *9. Such laws attempting to directly federal officers are always unconstitutional.

But even if some general laws could sometimes apply to some federal officers, that is not the situation here for several reasons. *First*, New Jersey's law is not generally applicable to the public. "The Act does not regulate conduct that any ordinary citizen could perform. Rather, it applies exclusively to law enforcement agencies and their officers, including federal law enforcement agencies and federal law enforcement officers." *California*, 173 F.4th at 1068. *Second*, New Jersey's reliance on dicta from *Johnson v. Maryland*, 254 U.S. 51, 55 (1920) that if "the United States has not spoken" it is possible that "general rules that might affect incidentally the mode of carrying out the employment" like turning corners might be allowed. *Id.* at 56. The holding of *Johnson*, however, was that a general driver's license law was unconstitutional because it applied to the federal duty of the Post Office employee in driving to deliver mail. That was true even though driving was one means of performing the duty of delivering the mail. Similarly, here,

24

New Jersey's mask/identification law applies to law enforcement officers in the performance of their duties. "[T]he Act thus directly regulates conduct reserved to sovereigns." *California*, 173 F.4th at 1068.

Nor can New Jersey define the federal function at a high level of generality such as arresting people. *City of Excondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019). That would let states micromanage how and when federal officers perform those duties, their uniforms, equipment, training, and more. And the identification law challenged here literally requires officers to wear identifying marks or verbally announce themselves before arresting someone, so it *does* regulate them during such core vital duties. So even if New Jersey was right that it can sometimes regulate federal officers, the law challenged here remains facially unconstitutional. No amount of obfuscation can save it.

It also makes no difference that the challenged law applies to local law enforcement as well. The relevant point is that the Supreme Court has made clear that the intergovernmental immunity doctrine "prohibit[s] state laws that *either* regulate the United States directly *or* discriminate against the Federal Government or those with whom it deals." *United States v. Washington*, 596 U.S. 832, 838 (2022) (alterations and quotation marks omitted). Thus, New Jersey cannot directly regulate federal officers even if that regulation simply replicates requirements it imposes on its own officers.

In addition, the Third Circuit's decision in *CoreCivic, Inc. v. Governor of N.J.*, 145 F.4th 315 (3d Cir. 2025) makes clear that "what cannot be done directly cannot be done indirectly." *Id.* at 322 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023)). Even if New Jersey tries to hide behind the fact that the challenged law applies to local law enforcement as well, that is of no moment (and would go to the discrimination

25

doctrine in any event). In passing the law, the Governor made clear from the beginning that this was *really* all about ICE, not local officers. *See* Johnson, *supra* note 2. It is not even apparent that local law enforcement officers have ever worn masks. The purpose and effect of the law is just to target and regulate federal officers in the performance of their duties. *CoreCivic*, 145 F.4th at 325 ("[W]e can easily see the law for what it really is: a regulation . . . .").

New Jersey may argue it can incidentally regulate federal officers. Again, at most that would only be for general laws that do not regulate governmental functions. In any event, the incidental test has been reserved for cases involving federal contractors, which have immunity "substantially narrower than that of a federal employee or other federal instrumentality." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022); *Geo Grp., Inc. v. Inslee*, 151 F.4th 1107, 1118 (9th Cir. 2025). The challenged New Jersey law does not regulate federal contractors; rather, it *directly* regulates federal officers. New Jersey's argument in this respect would collapse the distinction between contractors and employees. This it cannot do.

Even under the inapplicable incidental test, however, the law at issue here is anything but incidental. It requires officers to unmask and identify themselves in their duties, including in situations where doxxing, harassment, assault, and tracking is possible. S3114 § 3(a). That undermines officer safety and can increase evasion, thereby directly undermining federal operations. Phantharangsy Decl. ¶ 40. It also undermines federal officers' ability to apprehend individuals who pose significant risks to national security and public safety. *Id.* ¶ 41. Because suspects who recognize officers may take preemptive actions to evade apprehension and obstruct enforcement efforts, wearing facial coverings is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. *Id.* ¶ 42. The district court in *Virginia* credited these very real concerns. *Virginia*, 2026 WL 1909995, at *6.

If every state and locality could regulate how officers carry out these duties, Texas could force officers to wear masks, New York could force them to wear pink, and other states could dictate what cars federal officers drive, all under threat of criminal penalties. That would flip the Constitution on its head. "Endorsing [New Jersey]'s position would mean that each of those municipalities could decide whether to pass their own laws regulating how, when, where, and whether federal law enforcement officers can conceal their identities, which, in turn, would quickly devolve into a 'patchwork' of local and 'state laws [that] would defeat all the ends of government' and cause serious national disruption." *City of Phila.*, 2026 WL 1906075, at *11 (internal quotation omitted). This is not at all what the Framers envisioned for the Supremacy Clause in the U.S. Constitution.

## C.  The United States Suffers Irreparable Harm

The United States seeks a permanent injunction against Defendants enforcing this law. That requires meeting the equitable factors, including irreparable harm. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). First, as every court that has decided this issue held, the unconstitutional regulation of the Federal Government is itself an irreparable harm. *California*, 173 F.4th at 1069; *City of Phila.*, 2026 WL 1906075, at *12; Virginia, 2025 WL 1909995, at *14.

Even if more were needed (it is not), the law poses several additional irreparable harms, including endangering federal law enforcement officers, impeding their functions, and chilling federal activities. For instance, these provisions, by design, endanger federal officers because they seek to publicly expose their personal identities at a time of already escalating instances of violence against federal officers. Roddy Decl. ¶ 9. The exposure would facilitate escalating instances of harassment against those officers by agitators seeking to disrupt their operations. Hargis Decl.

27

¶ 13. For example, ICE officers are facing an 8,000% increase in death threats and a more than 1,000% increase in assaults, which are facilitated by doxxing websites that broadcast the identities and home addresses of officers and their families, encouraging retaliation against them. Phantharangsy Decl. ¶ 22.

The law also impedes federal functions because it fails to sufficiently account for instances in which federal officers may interact with the public when performing their official duties, but disclosure of their identities could place them or others at risk, including, for example, surveillance or protection assignments, which will jeopardize such operations. Hargis Decl. ¶¶ 19; Phantharangsy Decl. ¶ 40. Agents in such situations face a risk of prosecution for merely doing their jobs in an inconspicuous manner as is called for by such scenarios. Phantharangsy Decl. ¶ 19. Further, the challenged provisions would enable suspects to identify officers who may be involved in future enforcement actions, including undercover operations. *Id.* ¶ 38. Because suspects who recognize officers may try to evade apprehension and obstruct enforcement efforts, the discretion to modify uniforms and vehicles to protect officers and agents' identities is critical for maintaining operational effectiveness, especially in areas where repeat offenders or organized criminal networks are prevalent. *Id.*

Further still, due to the nature of law enforcement operations, officers require flexibility to determine when to identify themselves. To this end, CBP and ICE have discretion on when they permit their officers and agents to wear facial coverings and remove individual identifiers. Hargis ¶ 14. They also allow officers' discretion as to when and what information is provided to the subject of arrest, holding, or detention. 8 C.F.R. Part 287. For instance, DHS regulations provide that "an immigration officer who is authorized to execute an arrest" shall announce themselves and the purpose of the arrest "as soon as it is practical and safe to do so." 8 C.F.R. § 287.8(c)(2)(iii).

28

That is up to each officer based on the facts and circumstances in a particular case and cannot be subjected to bright-line or conflicting local rules or subject to criminal and civil liability. Removing this flexibility and requiring federal officers to identify themselves to a subject of arrest, holding, or detention or to produce a badge to any member of the public upon request undermine officer safety and effectiveness, particularly when the consequence of noncompliance is state enforcement.

Accordingly, once officer safety or the integrity of an operation is compromised, the harm cannot be undone. And while there are limited exceptions to the challenged provisions, they are vague, it is unclear who decides whether they are met, and they do not cover all federal operations. Compliance with the challenged provisions would prevent federal agents and officers from effectively engaging in important federal enforcement operations. Hargis Decl. ¶ 19. And enforcement against officers would, of course, have an enormous chilling effect on future operations. Phantharangsy Decl. ¶ 43.

For these reasons, the challenged provisions threaten to "destroy the federal function" of law enforcement. *United States v. Fresno Cnty.*, 429 U.S. 452, 463 n.11, 464 (1977). Because the Framers of our Constitution "did not intend" for federal operations to "depend on the discretion of the state governments," *McCulloch,* 17 U.S. (4 Wheat.) at 327, 362, New Jersey cannot unilaterally impose its policy preferences on the Federal Government. A "concurrent power in the [S]tates" to regulate federal operations "would bring back all the evils and embarrassments, which the uniform rule of the [C]onstitution was designed to remedy." 2 J. STORY, COMMENTARIES ON THE CONSTITUTION § 1099 (3d ed. 1858).

If the challenged New Jersey law were allowed to stand, there would be nothing to stop other municipalities and states from imposing further unconstitutional restraints on the Federal

29

Government. *See Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008) (allowing a state to act unconstitutionally "would allow other States to do the same"). This could, in turn, create a "patchwork" system of laws, *id.*, under which federal agents would be subject to different regulations in each municipality and state, severely undermining the Federal Government's ability to uniformly enforce federal law. As Third Circuit has opined, "[t]hat is a big step down a slippery slope. If we accepted New Jersey's logic, consider what else states might be able to do." *CoreCivic*, 145 F.4th at 328. This Court should reject New Jersey's logic as well.

## D.  The Equities Favor The United States

Again, every court that has ruled on this issue has held that there is no public interest in an unconstitutional law. *California*, 173 F.4th at 1069; *City of Phila.*, 2026 WL 1906075, at *14; *Virginia*, 2025 WL 1909995, at *14. Nor is the state harmed by an injunction against an unconstitutional law. "[T]he public interest [is] not served by the enforcement of an unconstitutional law." *New Jersey Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 389 (3d Cir. 2012) (alteration in original) (quoting *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003)); *California*, 173 F.4th at 1069 (stating that a violation of the Supremacy Clause necessarily means that "both the public interest and balance of the equities tip 'decisively in . . . favor' of a preliminary injunction"). That is especially true where enforcing the law would create a clash between state and federal officers. There is no interest in federal officers being stymied by a patchwork of local laws either. And the effect is to undermine federal officer safety and operations. Phantharangsy Decl. ¶¶ 37-45; Hargis Decl. ¶¶ 6, 8, 13, 16. Thus, the equities clearly favor an injunction here.

## V.   CONCLUSION

For the foregoing reasons, this Court should enter summary judgment in favor of Plaintiff.

30

Dated: July 27, 2026

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

TIBERIUS DAVIS
Counsel to the Assistant Attorney General

/s/ Robert O. Lindefjeld
ROBERT O. LINDEFJELD
Assistant Director (DC Bar No. 44423)
United States Department of Justice,
Enforcement and Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorneys for the United States*

31

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to all counsel of record.

/s/ Robert O. Lindefjeld
ROBERT O. LINDEFJELD
Assistant Director (DC Bar No. 44423)
United States Department of Justice,
Enforcement and Affirmative Litigation Branch
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Fax: (202) 305-7000
Telephone: (202) 451-7488
Email: robert.o.lindefjeld@usdoj.gov

*Attorney for the United States*